**Molly E. HYDE, Appellant–Respondent,**

v.

**John R. HYDE, Appellee–Petitioner.**

No. 49A05–0008–CV–00327.

Court of Appeals of Indiana.

July 3, 2001.

Publication Ordered July 18, 2001.

---

Monty K. Woolsey, Miroff, Cross & Klineman, Indianapolis, IN, Attorney for Appellant.

Bruce M. Pennamped, Christina D. Arvin, Lowe Gray Steele & Darko, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Molly E. Hyde (Molly) appeals the trial court's property division in her dissolution proceedings with her former husband, John R. Hyde (John). Molly asserts that the trial court failed to make specific findings to support its equal property distribution of Molly and John's assets. Further, Molly contends that the trial court erred in not setting aside an inheritance to her. Finally, Molly argues that the trial court's findings that the economic circumstances of the parties were substantially the same and that Molly was voluntarily underemployed are clearly erroneous. We conclude that the trial court entered specific findings on the factors and the trial court did not abuse its discretion in choosing not to set over Molly's inheritance to her. However, because we find that the trial court's findings with respect to the economic circumstances, earnings, and earning abilities of the parties are not supported by the evidence, we reverse and remand for reconsideration.

### Facts and Procedural History

Molly and John were married on August 14, 1982. Both parties came to the marriage with little property. John had two cars, household goods, and a life insurance policy. Molly also had a car and personal effects. John completed two and one-half years of college, and Molly has an associate's degree in design and a bachelor's degree in art.

During the marriage, John worked for Atlas Van Lines International for seven years and then for Mayflower International for an additional seven years. John received severance packages from both employers when his employment ended. At the time John's employment ended with Mayflower, he was earning approximately $40,000 to $50,000 per year. After leaving Mayflower, John was unemployed for six months, and then, in March 1993, he started his own transportation brokering company, Hyde Ocean Services, Inc. John started the business with money withdrawn from a retirement plan and a loan from a life insurance policy. The premi-

ums of this policy had been paid from John and Molly's joint account. During this startup period while the business was not doing well, Molly continued working full-time and carried John on her health insurance policy. In the beginning, John operated the business out of the marital home.

Presently, John is the sole shareholder of Hyde Ocean Services, Inc., a subchapter S corporation. The business is now located at a leased building, and John employs two people. Although the company did not fare well at first, by 1996, John received $53,400 in salary and $39,025 in distributions. In 1997, John's salary and distributions increased to $68,900 and $58,256 respectively. John's salary further increased to $72,500 in 1998. Additionally, he received $92,938 in distributions. After a business valuation was completed, the parties stipulated that Hyde Ocean Services was worth $331,500.

Molly worked for several different advertising agencies during the course of the marriage. Molly is a talented artist who has received awards for her work. Molly earned $42,536 in 1996 and $41,928 in 1997. Over the course of the marriage, the parties had discussed the possibility of Molly starting her own business. In October 1997, Molly quit her job at an advertising agency where she would have earned $47,000 in salary, and the following month began a freelance graphic design business called Molly Hyde, Inc. When Molly left her job, she also forfeited employer-provided health insurance benefits. In 1998, Molly earned $22,984 in salary and distributions. Molly operates her business out of the marital home and has no employees working for her.

During the marriage, John received several guns as gifts, and Molly received $444 in stock from her mother, a life insurance policy valued at $1,933, and approximately $1,350 in household items. Then, Molly received an inheritance from her grandparents totaling approximately $61,000 in the summer of 1997. Of this $61,000, Molly received approximately $10,000 in cash, with the remainder being in stocks. Molly placed $6,000 of the cash received into the parties' joint savings account, but later transferred the money to her business checking account, where she had already placed the rest of the cash distribution.

John filed for divorce on January 16, 1998. The court entered provisional orders on April 6, 1998. The court ordered that the marital residence be sold, and ordered John to maintain health, life, and automobile insurance, make automobile payments, and contribute to the mortgage. The trial court also restrained both parties from transferring, encumbering, concealing, or disposing of any property except for the ordinary course of business or the necessities of life. While the proceedings were pending, Molly lived in the marital residence until she bought another house. Molly borrowed money from her mother to help buy the house, and her mother co-signed the mortgage. The parties stipulated to their assets and the value of those assets, with the exception of which date should be used to value John's business stock portfolio.

On June 12, 2000, after a hearing, the trial court entered specific findings and conclusions. The trial court found that there was no reason to deviate from the statutory presumption of equal division of the marital estate. Thus, the court concluded that equal distribution was just and reasonable and divided the total net assets of $496,442 equally between John and Molly. John was credited for his payments pursuant to the provisional orders. The trial court found that the parties' economic circumstances were substantially the same, that both parties had contributed to the acquisition of the marital estate, and that

Molly was voluntarily underemployed.[1] The trial court also determined that because Molly had failed to meet her burden that a deviation from equal distribution was warranted, the inheritance she received from her grandparents would not be set over to her. Molly now appeals.

### Discussion and Decision

Molly contends that the trial court erred in dividing the marital estate equally because the court failed to apply and properly balance the statutory factors regarding property division found in Ind.Code § 31–15–7–5. Specifically, Molly argues that the trial court failed to make specific findings about the parties' earning abilities. Molly also asserts that the trial court erred in not setting aside to her the inheritance from her grandparents. Finally, she contends that the trial court's findings that she was voluntarily underemployed, and that the parties' economic circumstances were substantially the same were clearly erroneous. We address each argument in turn.

In the instant case, the trial court issued specific findings upon request of the parties. Our standard of review for specific findings entered after a party has requested them is two-tiered. *Bloodgood v. Bloodgood,* 679 N.E.2d 953, 956 (Ind.Ct. App.1997). First, we must determine whether the evidence supports the findings, and then whether the findings support the judgment. *Id.* We will reverse the judgment only when it is clearly erro-

neous. *Id.* Findings are clearly erroneous when the record lacks any evidence to support them. *Id.* Upon review, we will neither reweigh the evidence nor assess witness credibility. *Id.*

We also apply a strict standard of review to a court's distribution of property upon dissolution. *Wilson v. Wilson,* 732 N.E.2d 841, 844 (Ind.Ct.App.2000), *trans. denied.* The division of marital assets is a matter within the sound discretion of the trial court. *In re Marriage of Davidson,* 540 N.E.2d 641, 645 (Ind.Ct. App.1989), *reh'g denied.* The party challenging the trial court's property division bears the burden of proof. *Wilson,* 732 N.E.2d at 844. That party must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors. *Id.* "The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal." *Id.* Thus, we will reverse a property distribution only if there is no rational basis for the award. *Id.* Although the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court. *Id.*

The division of marital property is governed by I.C. § 31–15–7–5. Generally, there is a presumption that an equal distribution of marital property is just and rea-

---

1. The relevant finding with respect to this issue reads in pertinent part:

    26. The Court has considered evidence as to the factors contained in I.C. 31–15–7–5 as follows:

    (i) Both parties contributed to the acquisition of the marital estate. Wife is voluntarily underemployed because she elected to start her own business.... The parties are of substantially the same economic circumstances.

* * *

In considering the above factors, the Court finds that there is no reason to deviate from the statutory presumption of an equal division of the marital estate. As a result, the Court finds the marital estate should be divided evenly between the parties.... Record 296–97.

sonable. I.C. § 31–15–7–5. However, there are factors that can serve to rebut the presumption of equally dividing the marital estate. In particular, I.C. § 31–15–7–5 provides:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

Specifically, Molly insists that she rebutted the presumption of equal division with evidence of her comparatively diminished economic circumstances and earning ability and the inheritance she received from her grandparents.

■ Molly contends that the trial court failed to make specific findings on all of the statutory factors regarding property division. Specifically, she asserts that the court failed to enter findings on the parties' earnings and earning abilities. We note initially that the trial court was not required to make specific findings on the statutory factors listed in I.C. § 31–15–7–5 because it decided not to deviate from the presumption of equal property division. *See Shumaker v. Shumaker*, 559 N.E.2d 315, 318 (Ind.Ct.App.1990) (positing that courts are not required to make specific findings unless there is a substantial deviation from equality). Although not required to give a thorough discussion of each statutory factor explaining why an equal division is justified, the court in the case before us nevertheless made specific findings about the factors. Thus, this allegation of error fails.

■ Next, Molly argues that the trial court abused its discretion in failing to set aside her $61,000 inheritance. Molly cites *Castaneda v. Castaneda*, 615 N.E.2d 467 (Ind.Ct.App.1993) and *Scott v. Scott*, 668 N.E.2d 691 (Ind.Ct.App.1996) to support her position. Although the courts in *Castaneda* and *Scott* affirmed setting aside the party's inheritance because the funds were never co-mingled with the marital assets, both of those cases recognize that while a trial court must include the inheritance in the marital pot, the decision of whether to set over the inheritance to a party is discretionary. *Castaneda*, 615 N.E.2d at 469; *Scott*, 668 N.E.2d at 708. Also, in both of these cases, our court affirmed a trial court, acting within its discretion to set over the inheritance. In this case, the trial court decided within its discretion that the $61,000 inheritance should not be set over to Molly because it found that Molly had failed to meet her burden that a deviation from equal division was warrant-

ed. The trial court explained all of its options in its findings, but decided not to set aside the inheritance. We cannot say that this decision was an abuse of discretion.

Additionally, Molly places emphasis on the fact that she received this inheritance just six months before John filed for dissolution of their marriage. However, Molly fails to point us to any authority stating that an inheritance received in the late stages of a marriage must be set aside. In fact, in *Bloodgood*, the court held that it was not error to fail to set aside a $349,833.25 inheritance to the husband, even though he received it just one month prior to the dissolution filing. 679 N.E.2d at 958. The court reasoned that while case law gives trial courts the authority to award an inheritance to a party, they do not mandate an award. *Id.* Thus, the trial court did not err in failing to set the inheritance over to Molly.

■ Finally, Molly alleges that the trial court's findings, stating that she was voluntarily underemployed and that the parties' economic circumstances were substantially similar, were not supported by the evidence. With respect to economic circumstances and earning ability, the trial court concluded that John and Molly's economic circumstances are substantially the same; especially since Molly was voluntarily underemployed. In particular, Molly asserts that this finding is clearly erroneous because she has acquired substantial debt, is struggling to meet her regular expenses, and is presently drawing a salary of only $17,500. We agree.

Molly's salary in 1998 was just under $23,000 while John earned $72,500 and received $92,938 in distributions from his business. Molly's financial situation, in light of her new business and her debt, is rather grim while John's financial situation is comfortable, as his business is making

substantial profit. Although we acknowledge that a dissolution court's role is not to equalize salaries and we review for an abuse of discretion, we conclude that the findings made by the trial court that the parties' economic circumstances are substantially similar in this case are not supported by the evidence.

Moreover, the trial court may have rationalized the parties' unequal economic circumstances and earnings by concluding that Molly was voluntarily underemployed. For guidance on this issue, we look to the decision that a trial court makes to impute income to a parent who is voluntarily underemployed when calculating child support. The Indiana Child Support Guidelines recognize that some parents may take measures to avoid child support obligations, including becoming unemployed or underemployed. *Gilpin v. Gilpin*, 664 N.E.2d 766, 767–68 (Ind.Ct.App.1996). To avoid this problem, a court has the discretion to impute income to a parent if the court believes that the party is intentionally avoiding a child support obligation. Ind. Child Support Guideline 3(A)(3). However, the trial court must "review the obligor's work history, occupational qualifications, prevailing job opportunities, and earning levels in the community" before determining whether income should be imputed. Child Supp.G. 3(A)(3). Our court has acknowledged that there are legitimate reasons for parents to leave their employment or accept employment with a lower pay. *See Homsher v. Homsher*, 678 N.E.2d 1159, 1164 (Ind.Ct.App.1997) (positing that child support orders are not to be used as tools to promote a society that forces people to make career decisions strictly based on the size of the paychecks).

■ In this case, Molly had a legitimate reason for quitting her job with the advertising agency. She was starting her

own business, and although the business was not very profitable in its infancy, it could prove successful in the future. Further, she only made this decision after she and John discussed quitting her job to allow her to start her own business. Molly had no knowledge that John would file for dissolution of their marriage two months later. Molly undoubtedly planned to rely on John financially while her business was growing just like John had relied on her during the period that his business was struggling. Thus, the determination that Molly was voluntarily underemployed fails to recognize the surrounding circumstances that prompted her to leave her higher paying job.

■ Because the court's findings with respect to economic circumstances and earning abilities served as the basis for its decision to equally divide the marital estate, we must remand for reconsideration of· the property division in light of our conclusion that the findings are clearly erroneous. Although we have concluded that it was not error for the trial court to choose not to set aside Molly's inheritance, based on the our conclusion that the property division should be reconsidered, we do not wish to constrict the trial court's discretion on this issue as well. As a final point, we note that the trial court ordered John to pay the property settlement to Molly over a four-year period without interest. This was erroneous because Molly is entitled to the annual interest rate applied to judgments of eight percent pursuant to Ind.Code § 24–4.6–1–101.

We affirm in part, reverse in part and remand for reconsideration in light of this opinion.

ROBB, J., and BROOK, J., concur.

### ORDER

This court having heretofore handed down its opinion in this appeal on July 3, 2001, marked Memorandum Decision, Not for Publications; and

Comes now the Appellant, by counsel, and files herein her Motion to Publish, alleging therein that said decision should be published because it establishes, modifies or clarifies a rule of law pursuant to Appellate Rule 64A(1), in that said decision clarifies what is meant by "voluntary underemployment," it clarifies the presumption that an equal property division is most just and reasonable is a rebuttable presumption; that said decision clarifies and confirms that trial courts are not mandatorily required but must exercise discretion when determining whether to set over an inheritance to a party who received it, and prays this Court to designate for publication its opinion in this case heretofore handed as a Memorandum Decision, which said Motion is in the following words and figures, to-wit:

(H.I.)

And the Court, having examined said Motion, having reviewed its opinion and being duly advised, now finds that said Motion to Publish should be granted and that this Court's opinion heretofore handed down in this case on July 3, 2001, marked Memorandum Decision, Not for Publication, should be and now is ordered published.