**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 06 2013, 8:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN V. COMMONS**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DAVID ROSSELOT**
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HEATHER MCWHORTER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1207-DR-527 |
| | ) | |
| BILL MCWHORTER, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable George A. Hopkins, Judge
Cause No. 34D04-0912-DR-1397

**June 6, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Heather McWhorter appeals from the trial court's equal division of marital property upon the dissolution of her twenty-nine-year marriage to Bill McWhorter. Heather claims that she was entitled to a larger share of the estate because of the parties' disproportionate earning abilities. On cross-appeal, Bill presents the following restated issues for review:

1.    Did the trial court err in granting Heather's request to rescind a post-dissolution order entered pursuant to an agreement regarding marital real estate located in Denver?

2.    Did the trial court err in the division of certain debt associated with Bill's 401K?

3.    Did the trial court abuse its discretion when valuing certain items of personal property?

We affirm in part, reverse in part, and remand.

After twenty-nine years of marriage, Bill filed a dissolution petition on September 10, 2009. The parties have an adult daughter, Morgan, and an adult son, Ben. Their youngest child, Ben, was nineteen at the time the dissolution petition was filed and was attending college.

The trial court entered a provisional order on May 31, 2011. Bill was ordered to provide Ben with $700 per month for post-secondary educational expenses, to pay spousal maintenance to Heather in the amount of $200 per week, and to maintain health insurance for Heather through his employer. Bill complied in full.

Bill worked at all times during the marriage and now earns approximately $140,000 per year. Heather worked off and on during the marriage, earning as much as $20 per hour

2

between 1988 and 1999[1] and more recently $12 per hour. During the marriage, she interrupted her professional career to spend more time with her children. She also maintained the home and was the primary care provider for the children. Bill's current earning ability is greater than Heather's.

The couple's net marital estate amounted to well over $650,000. The assets of the estate included various retirement accounts, four vehicles, a home in Colorado (the Denver Property), a home in Kokomo being sold on contract to the Deason family[2] (the Deason Property), a tract with a pole barn and another one-acre tract in Kokomo, and various items of personal property in Colorado and Indiana. At the time the dissolution was filed, Heather lived in the Denver Property and Bill lived in the pole barn. Sometime during the pendency of the underlying action, Heather left the Denver Property and moved in with her sister in Ohio.

The evidentiary hearing commenced on August 25, 2011 and concluded after a second day on September 28, 2011. On October 20, 2011, the trial court entered its decision with findings of fact and conclusions of law, along with a spreadsheet setting out the valuation and division of property. The trial court attempted an equal distribution of the marital estate and ordered a property settlement judgment in favor of Heather in the amount of $26,720.50.

---

[1]  During this period, Heather was given 3 years off by her employer so that she could move to Japan for a career opportunity for Bill, who worked for the same company.

[2]  The conditional contract for the sale of this real estate was executed on March 18, 2009. Bill and Heather used proceeds from this sale, along with a loan from Bill's 401K, as part of the down payment for the Denver Property, which they bought that same spring with their son. The monthly payments from the Deasons were subsequently used to pay mortgages on both the Deason Property and the Denver Property.

Further, the court ordered Bill to continue to pay $700 per month to Ben until May 31, 2012.

With respect to the Denver Property, the court indicated that it should be immediately listed for sale with a licensed real estate agent and that in the interim the parties were to each pay one-half of the utility expenses, taxes, insurance, and homeowners dues. Payments from the Deasons were to continue to be applied to the mortgages on the Deason and Denver Properties. If the funds were insufficient to cover both mortgages, the parties were to split the remaining amount due. Upon sale of the Denver Property and payment of the mortgage and remaining expenses, the parties were to divide any remaining proceeds of the sale. Bill and Heather agreed, however, that there was likely to be little to no proceeds.

Both parties filed a motion to correct error in November 2011. Among other things, Heather alleged: (1) an equal division of the marital estate was not equitable; (2) the court should have awarded temporary spousal maintenance in the form of health insurance; and (3) the Denver Property should have been awarded to Bill because Heather was unable to share in the costs associated with this property pending its sale.

While the motions to correct error were pending, the parties reached an agreement regarding the Denver Property (the Denver Agreement). An agreed entry, signed by the parties' respective counsels, was approved by the trial court on February 13, 2012. Pursuant to the Denver Agreement, Heather was to "immediately deed the property to [Bill] and he will be allowed to sell or otherwise dispose of the property." *Appellee's Appendix* at 45. In exchange, Heather was to "no longer be responsible for one-half (1/2) of the out-of-pocket payments, taxes, homeowner's association fees or other costs attached to the real estate." *Id.*

4

The Denver Agreement provided further that Heather's furniture and household goods were to be left in the home for ninety days or until the sale of the property, whichever occurred first.

On May 11, 2012, Bill filed an addendum to his motion to correct error, in which he alleged the following error:

> (a) The Court, in it's [sic] division of property, awarded one-half (1/2) of the 401 K debt to [Heather]. The 401 K belongs to [Bill]. The 401 K debt is a pay back of money borrowed from the 401 K and used by the parties.
> (b) [Heather] can not pay this sum as the pay back of the 401 K is a mandatory withdrawal from [Bill's] wages. No outside payments can be made on this loan. As such, [Heather] can not satisfy the debt as set forth in the Court's balance sheet.

*Id*. at 44.

The court held a hearing on all pending matters on May 16, 2012, including a motion filed by Heather that day entitled Repudiation of Agreed Entry Regarding Denver Property. Heather asked the court to rescind the order entered pursuant to the Denver Agreement on the basis that a term providing for an $8000 payment to Ben had been left out through an oversight by her previous attorney. Although the February agreed entry required her to immediately deed the property to Bill, Heather acknowledged that she had yet to do so because of the omitted provision regarding Ben. At the hearing, Bill argued that Heather had no basis to ignore the order but indicated that he did intend to give this money to Ben when the property sells or when Ben's first student loan comes due, whichever is first.

On June 4, 2012, the court issued its ruling on all pending motions. The court, among other things, rejected Heather's request for an unequal division of the marital estate, granted

5

her request to rescind the agreed entry, ordered Bill to provide temporary maintenance in the form of health insurance for Heather, and denied Bill's request regarding the 401K loan. The court also corrected a few clerical errors in the valuation worksheet, which resulted in a slightly larger property settlement awarded to Heather to equalize the distribution. Heather and Bill both appeal the trial court's distribution of property.

<u>Heather's Appeal</u>

We turn first to Heather's claim that the trial court erred by dividing the marital estate equally between the parties. Heather argues, essentially, that because the trial court found Bill's earning ability to be greater than hers, the court was required to "offset" this disparity by awarding her more of the marital estate. *Appellant's Brief* at 8.

The division of marital property lies within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Keown v. Keown*, 883 N.E.2d 865 (Ind. Ct. App. 2008). Such an abuse occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances presented. *Id*. Abuse also occurs when the trial court misinterprets the law or disregards evidence of factors listed in the controlling statute. *Augspurger v. Hudson*, 802 N.E.2d 503 (Ind. Ct. App. 2004).

> "The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal." *Hyde v. Hyde,* 751 N.E.2d 761, 765 (Ind. Ct. App. 2001). Thus, we will reverse a property distribution only if there is no rational basis for the award and, "[a]lthough the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court." *Id.*

*Id*. at 512.

6

When dividing the marital property, the court shall presume that an equal division is just and reasonable. Ind. Code. Ann. § 31-15-7-5 (West, Westlaw current through P.L. 76 with effective dates through April 15, 2013). This presumption, however, "may be rebutted by a party who presents relevant evidence…that an equal division would not be just and reasonable." *Id*. I.C. § 31-15-7-5(5) provides as an example that evidence of the "earnings or earning ability of the parties as related to: (A) a final division of property; and (B) a final determination of the property rights of the parties" may be considered.

In this case, the evidence clearly establishes that Bill has a greater earning ability than Heather. To be sure, at the time of dissolution, Bill was earning $140,000 per year and Heather was unemployed (less than a year), though looking for work and capable of working. Further, although Heather had a significant work history during their twenty-nine-year marriage, her career development was voluntarily curbed, especially in later years, by her role as wife and mother.

On this evidence, the trial court certainly could have deviated from the statutory presumption of a 50/50 split. Heather, however, has failed to establish that the trial court abused its discretion in refusing to do so. *See Augspurger v. Hudson*, 802 N.E.2d at 513 ("[w]hile the trial court's findings of fact in the Decree could support deviation from the presumed equal division of the marital estate, we conclude that such deviation is not mandated"). In fact, the only case Heather cites to support her argument is an unpublished memorandum decision of this court. Indiana Appellate Rule 65(D) makes clear that such decisions "shall not be regarded as precedent and shall not be cited to any court except by the

parties to the case to establish res judicata, collateral estoppel, or law of the case." Heather's

reliance, therefore, on *White v. White*, 966 N.E.2d 792 (Ind. Ct. App. 2012) is improper.

Here, the trial court acknowledged the existence of unequal earnings but declined

Mother's invitation to deviate from the statutory presumption both in the original decree and

in its order on motion to correct error. In addition to awarding half of the relatively

substantial marital estate to Heather, we observe that the trial court awarded temporary

spousal maintenance in the form of health insurance, awarded payment of attorney fees to

her, and ordered Bill to pay all of the parties' parental obligation to contribute to the post-

secondary expenses of their son, Ben. In light of the overall effect of the dissolution on the

parties, Heather has not established that the trial court's decision to divide the marital estate

equally is unjust or unreasonable. *See Augspurger v. Hudson*, 802 N.E.2d at 513 ("[d]ivision

of property should not be considered in a vacuum, and the trial court is free to consider other

awards…when determining the proper division").

Bill's Cross-Appeal[3]

1.

The first issue raised by Bill on cross-appeal addresses the propriety of the trial court's

grant of Heather's request to rescind (i.e., revoke) the order entered pursuant to the Denver

Agreement. Bill argues that this action was improper under I.C. § 31-15-7-9.1 (West,

Westlaw current through P.L. 76 with effective dates through April 15, 2013) because

---

[3] Heather did not file a brief in response to the cross-appeal issues raised by Bill. Accordingly, we may reverse if Bill presents a prima facie case of error. *In re Riddle*, 946 N.E.2d 61 (Ind. Ct. App. 2011). Prima

8

Heather did not allege fraud.

I.C. § 31-15-7-9.1 provides:

(a) The orders concerning property disposition entered under this chapter [] may not be revoked or modified, except in case of fraud.

(b) If fraud is alleged, the fraud must be asserted not later than six (6) years after the order is entered.

Thus, fraud must be alleged and found in order to revoke or modify an order dealing with property disposition.[4]

In the instant case, Heather did not allege or prove fraud. On the contrary, she alleged simply that her former attorney had erroneously left out a term from the agreement that she had expressed to him was important to her. The trial court revoked the agreement, over Bill's objection, based upon a finding that "the agreement did not contain the entire agreement of the parties." *Appellee's Appendix* at 27.

Bill has established prima facie error in this regard. The trial court had no authority to rescind the Denver Agreement without Bill's consent. *See Ryan v. Ryan*, 972 N.E.2d 359 (Ind. 2012). Therefore, we reverse this portion of the June 4, 2012 order and remand with instructions for the trial court to reinstate the Denver Agreement.

2.

The next issue raised by Bill concerns the trial court's treatment of the 401K debt. This marital debt arose from a loan Bill and Heather took out against Bill's 401K to pay part

facie error is "error at first sight, on first appearance, or on the face of it." *Sand Creek Country Club, Ltd. v. CSO Architects, Inc.*, 582 N.E.2d 872, 876 (Ind. Ct. App. 1991).

[4] Of course, this does not prevent parties from agreeing to a revocation or modification of such an order.

of the down payment on the Denver Property. The court divided the $8769.93 debt equally between the parties. In his addendum to his motion to correct error, Bill indicated that the payback of the 401K will be accomplished through mandatory withdrawals from his wages and that Heather cannot make direct payments on this loan. Accordingly, Bill sought to have the entire debt set off to him and then for the court to make an adjustment in the award of property. Heather did not object.

In its June 4, 2012 order, the trial court denied Bill's request. The court indicated as follows: "The Court's ruling as to the 401K loan places the responsibility to pay the loan on both parties. The Court will not direct the parties as to the method of repayment." *Appellant's Appendix* at 30.

Under the circumstances, therefore, Heather will pay her share of the debt directly to Bill as it becomes due, not unlike what the parties had been doing with respect to the bills related to the Denver Property. While Bill's suggested property distribution might have been more optimal, Bill has failed to establish an abuse of discretion with respect to the course chosen by the trial court.

3.

Finally, Bill contends that the trial court erred in valuing the personal property in the pole barn, for which neither party obtained appraisals. With respect to this property, Heather submitted Exhibit D with a list of property having a total value of $29,247, and Bill submitted Exhibit 11 with property totaling $2735. Bill claims that Heather "attached a very self-serving high value to the items she intended to leave husband" and a "low value to those

10

items she intended to keep". *Appellee's Brief* at 20. Further, he asserts that his exhibit is "much more detailed" and "superior to the list submitted by wife." *Id.* at 21.

Upon reviewing the exhibits and testimony, the trial court expressly found: "the exhibits offered by the wife are more comprehensive than those offered by the husband. Respondent's Exhibit D was compiled at the time of the purchase of the Colorado property." *Appellee's Appendix* at 20. The court, therefore, used the figures in Heather's exhibit and valued the personal property in the barn at $27,112.[5] In its subsequent order, the court noted a clerical error and adjusted the total valuation to $27,012.

We reject Bill's blatant invitation for us to reweigh the evidence. The values found by the trial court were within the range of the evidence, and the trial court did not abuse its discretion in determining that Heather's valuations were more accurate than Bill's. *See Sanjari v. Sanjari*, 755 N.E.2d 1186 (Ind. Ct. App. 2001).

Judgment affirmed in part, reversed in part, and remanded with instructions.

CRONE, J., concurs.

ROBB, C.J., dissents with a separate opinion.

---

[5] This amount was less than the total in Heather's exhibit because the court excluded a missing diamond pendant (valued at $2235).

**IN THE**
**COURT OF APPEALS OF INDIANA**

| | | |
|---|---|---|
| HEATHER MCWHORTER | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1207-DR-527 |
| | ) | |
| BILL MCWHORTER | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

**ROBB, Chief Judge, dissenting**

I respectfully dissent from the majority's conclusion that the trial court erred in rescinding the Denver Agreement without Bill's consent.

The majority relies on Indiana Code section 31-15-7-9.1 and the fact that Heather did not allege or prove fraud. However, that statute is not the only relevant source of law. We have acknowledged previously that Trial Rule 60(B) may be available to provide relief when a party petitions to rescind an order regarding division of property, even in the absence of fraud. See Dusenberry v. Dusenberry, 625 N.E.2d 458, 461-62 (Ind. Ct. App. 1993). In

Dusenberry, we concluded that Trial Rule 60(B)(1) was not available to correct the mistake in that case, because the petition to modify was filed more than one year after the decree was entered. Id. at 462 In this case however, Heather filed her motion to repudiate the agreement well within a year of submission of the Denver Agreement to the court.

I believe that the court was well within its discretion to grant the motion to repudiate the agreement where the motion was filed within one year. Especially so here, where Bill does not seem to contest that the Denver Agreement contained a mistake and did not in fact reflect the agreement of the parties. It appears that Bill acknowledges that the parties intended to include the provision regarding a payment to Ben, and in fact Bill represented that he intended to give the money to Ben; he must therefore only have contested the motion to be contrary. Because the parties both acknowledge that the Denver Agreement as submitted to the court did not reflect the will of the parties, and because Heather's motion was filed within one year of the order and therefore fell within Trial Rule 60(B), I would affirm the decision of the trial court.

In all other respects, I concur with the majority opinion.