# MEMORANDUM DECISION



Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

FILED

Aug 11 2016, 9:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia Phillips Smith
Lafayette, Indiana

ATTORNEY FOR APPELLEE

Jennifer Fehrenbach Taylor
Fehrenbach Taylor Law Office
Lafayette, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gerhard Klimeck,<br>*Appellant,*<br><br>v.<br><br>Virginia Klimeck,<br>*Appellee.* | August 11, 2016<br><br>Court of Appeals Cause No.<br>79A02-1510-DR-1796<br><br>Appeal from the Tippecanoe<br>Circuit Court<br><br>The Honorable Thomas H. Busch,<br>Judge<br><br>Trial Court Cause No.<br>79C01-1501-DR-10 |

**Barnes, Judge.**

# Case Summary

Gerhard Klimeck appeals the denial of the motion to correct error he filed following the trial court's issuance of findings of fact, conclusions of law, and dissolution decree in his divorce from his wife Virginia Klimeck. We affirm in part, reverse in part, and remand.

# Issues

The restated substantive issues before us are:

I. whether the trial court divided the marital estate in a just and reasonable manner;

II. whether the trial court abused its discretion by ordering Gerhard to make spousal maintenance payments to Virginia; and

III. whether the trial court abused its discretion by imposing a "gag order" on Gerhard with regard to Virginia's medical conditions and treatment.

# Facts

Gerhard and Virginia were married on July 1, 1995, and have two children. Gerhard is a tenured professor at Purdue University. Virginia, who has a bachelor's degree in chemical engineering and a master's degree in business administration, was not employed outside the home after 2002 and, instead, cared for the couple's children. Their first child was born in 2004, and their second was born in 2007. In 2006 and 2008, Gerhard inherited property in Germany from his parents. He sold the property and invested the proceeds in several German accounts. During the parties' marriage, Gerhard made some

deposits into those accounts, and the family used some of the money in them to finance visits to Germany.

[4] On February 19, 2014, Gerhard filed a Petition for Dissolution of Marriage. Shortly before Gerhard filed the petition, and while the petition was pending, Gerhard made numerous sizeable withdrawals from the parties' joint Fidelity accounts. Less than a month before filing the petition, and without Virginia's agreement, Gerhard transferred approximately $280,000.00 from a joint Fidelity account into the children's 529 college savings accounts. Despite the fact that Gerhard's salary was sufficient to support himself and the children, Gerhard used marital assets to cover their living expenses while the petition was pending. As a result of his withdrawals, Gerhard incurred $66,000.00 in capitals gains taxes.

[5] After a hearing, the trial court entered findings of fact, conclusions of law, and a dissolution decree on July 1, 2015. The trial court ordered Gerhard to pay the $66,000.00 in capital gains taxes but otherwise divided the marital estate, including the German accounts, equally. The trial court also ordered Gerhard to make maintenance payments to Virginia until December 25, 2015, and to refrain from divulging information related to Virginia's medical conditions or treatment.

[6] Gerhard and Virginia both filed motions to correct error after the trial court issued its final order. The trial court held a hearing on those motions on September 4, 2015. On October 14, 2015, the trial court issued corrected

findings of fact, conclusions of law, and dissolution decree. On October 28, 2015, Gerhard filed his timely notice of appeal in this matter.

## Analysis

[7] At the outset we acknowledge the unusual procedural posture of this case with regard to the parties' motions to correct error. Both parties filed motions to correct error after the trial court issued its July 1, 2015, order. The trial court then held a timely hearing on those motions. Pursuant to Trial Rule 53.3, the trial court was required to rule on the motions to correct error within thirty days after they were heard. It did not do so, however, nor did it seek an extension of time in which to issue its ruling. Ind. Tr. Rule 53.3. The parties' motions were thus deemed denied on October 5, 2015. *Id.* After the motions were deemed denied, the trial court issued corrected findings of fact, conclusions of law and dissolution decree on October 14, 2015.

[8] We acknowledge that our supreme court has outlined a narrow set of circumstances under which a belatedly-granted motion to correct error may stand. *See Cavinder Elevators v. Hall*, 726 N.E.2d 285 (Ind. 2001). Neither party, however, contends the belatedly-issued corrected findings of fact, conclusions of law and dissolution decree stand in this case. Instead, the parties base their arguments on the trial court's original, July 1, 2015, order. We therefore do not address whether the *Cavinder Elevators* exception applies in this case but instead review the trial court's deemed denial of Gerhard's motion to correct error for an abuse of discretion. *State of Indiana and Indiana Bureau of Motor Vehicles v.*

*Hargrave*, 51 N.E.3d 255, 259 (Ind. Ct. App. 2016). Doing so requires that we examine the trial court's July 1, 2015, findings of fact, conclusions of law and dissolution decree.

[9] Virginia requested, and the trial court issued, findings of fact and conclusions of law; we will not set aside the court's findings unless they are clearly erroneous. *Mitchell v. Mitchell*, 875 N.E.2d 320, 322-23 (Ind. Ct. App. 2007), *trans. denied*. We determine whether the evidence supports the findings and the findings support the judgment. *Id.* We do not reweigh the evidence or reassess the credibility of witnesses. *Id.* "Rather, a trial court's findings of fact will only be found clearly erroneous when the record is without any evidence or reasonable inferences to support them." *Id.* at 323. "We give considerable deference to the findings of the trial court in family law matters." *Stone v. Stone*, 991 N.E.2d 992, 999 (Ind. Ct. App. 2013), *aff'd on reh'g*.

## I.   *Division of Marital Assets*

[10] Gerhard first contends the trial court abused its discretion when it divided the marital estate. The pertinent question is whether the trial court's division of the marital property was just and reasonable. *Morgal-Henrich v. Henrich*, 970 N.E.2d 207, 210-11 (Ind. Ct. App. 2012). "Although this is in some sense an issue of law, it is highly fact sensitive and is subject to an abuse of discretion standard." *Id.* at 211. Pursuant to Indiana Code Section 31-15-7-4(b), the trial court must divide the marital property in a "just and reasonable manner." "The court shall presume that an equal division of the marital property between the parties is just and reasonable." I.C. 31-15-7-5.

[11] "Our supreme court has held that a trial court's disposition is to be considered as a whole, not item by item." *Morgal-Henrich*, 970 N.E.2d at 212.

> In crafting a just and reasonable property distribution, a trial court is required to balance a number of different considerations in arriving at an ultimate disposition. The court may allocate some items of property or debt to one spouse because of its disposition of other items. Similarly, the factors identified by the statute as permitting an unequal division in favor of one party or the other may cut in different directions. As a result, if the appellate court views any one of these in isolation and apart from the total mix, it may upset the balance ultimately struck by the trial court.

*Fobar v. Vonderahe*, 771 N.E.2d 57, 60 (Ind. 2002). "[A] party challenging the trial court's decision on appeal must overcome a strong presumption that the trial court acted correctly in applying the statute." *In re Marriage of Marek*, 47 N.E.3d 1283, 1288 (Ind. Ct. App. 2016), *trans. denied*. A review of the trial court's order in this case reveals the court intended to divide the marital assets evenly between Gerhard and Virginia.

### A. German Accounts

[12] Gerhard first contends the trial court should have segregated several German investment accounts from the marital estate.[1] These accounts were funded, at

---

[1] Gerhard also argues, "The Court treated all three of the German funds the same in its Order, when there were different circumstances for each." Appellant's Br. p. 17. Virginia notes Gerhard's Appellant's Brief "refers to three German accounts at issue, but does not clarify which three of the four German accounts are at issue." Appellee's Br. p. 20-21. We need not address these issues because we conclude the trial court properly divided these assets.

least in part, by the sale of property Gerhard inherited from his parents in Germany.

> [] In an action for dissolution of marriage . . . the court shall divide the property of the parties, whether:
>
> (1)  owned by either spouse before the marriage;
>
> (2)  acquired by either spouse in his or her own right:
>
>> (A) after the marriage; and
>>
>> (B) before final separation of the parties; or
>
> (3)  acquired by their joint efforts.

I.C. § 31-15-7-4.  This "one pot" theory of marital property "ensures that all marital assets are subject to the trial court's power to divide and award." *Marek*, 47 N.E.3d at 1288.   Consequently, the trial court properly included the German accounts as part of the marital estate.

We presume that an equal division of marital property is just and reasonable. I.C. § 31-15-7-5.  This presumption may be rebutted by showing:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2)  The extent to which the property was acquired by each spouse:

> (A) before the marriage; or
>
> (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective . . .
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5) The earnings or earning ability of the parties as related to:
>
> > (A) a final division of property; and
> >
> > (B) a final determination of the property rights of the parties.

*Id.* Thus, inheritance is only one factor to consider in deviating from an equal division of marital property.

[14] With regard to the German accounts, the trial court found:

> 40. The parties jointly decided how to invest the monies in the German accounts that Husband inherited from his parents in 2006 and 2008.
>
> 41. Husband had earnings from international employment deposited into the accounts in Germany during the parties' marriage.
>
> 42. Husband spent monies from the German accounts for the family's travel in Europe during the parties' marriage.

43. The German accounts were included in the parties' joint tax return filings from 2006-2013.

App. p. 26. Gerhard does not specifically challenge any of the above-quoted findings. Instead, he directs us to the evidence favorable to his position and argues that the evidence does not support the trial court's order. Our standard of review does not permit us to reweigh the evidence. *Mitchell*, 875 N.E.2d at 322-23.

[15] Gerhard relies on *Castaneda v. Castaneda*, 615 N.E.2d 467 (Ind. Ct. App. 1993), to support his contention that, because the three (unidentified) German accounts were funded at least in part through the sale of inherited property and were never commingled with other marital assets, they should have been segregated from the marital estate or not divided between the parties. This Court addressed that precise argument in *Hyde v. Hyde*, 751 N.E.2d 761 (Ind. Ct. App. 2001):

> Although the court in *Castaneda* . . . affirmed setting aside the party's inheritance because the funds were never co-mingled with the marital assets, [that case] recognize[s] that while a trial court must include the inheritance in the marital pot, the decision of whether to set over the inheritance to a party is discretionary.

*Hyde*, 751 N.E.2d at 766.

[16] Our review of the record reveals that Gerhard testified he and Virginia included the German accounts on their joint tax return. Virginia testified Gerhard deposited income from international speaking engagements into the German

accounts and that family vacations to Germany were funded, at least in part, by the money in those accounts. Virginia also testified she and Gerhard made decisions together regarding funding the German accounts. Given the joint decision-making regarding the accounts and use of the money for family vacations, Gerhard has not demonstrated that the trial court abused its discretion by equally dividing the assets.

## B. Mitsubishi Automobile

[17] Gerhard contends the trial court abused its discretion by identifying the value of the Mitsubishi Outlander Sport, which the trial court ordered him to purchase for Virginia, as a distinct asset and also including the value of the vehicle in the valuation of the bank account from which Gerhard paid for it. Virginia concedes the trial court "double counted" the value of the vehicle, $16,250.00. Appellee's Br. p. 18. As such, we remand this matter and instruct the trial court to correct its calculations with regard to the Mitsubishi Outlander Sport.

### C. Fidelity and Credit Union Accounts/Credit for Maintenance Payments

[18] Gerhard next contends the trial court abused its discretion by "failing to include the proper amount of the Fidelity account and the PEFCU [Purdue Employees Federal Credit Union] account Virginia received" and "despite paying the sum of $3,200.00 per month in temporary maintenance and the sum of $5[,]600.00 per month in maintenance after the Dissolution Decree was entered, the Trial Court refused to give Gerhard any credit for the property settlement monies owed to Virginia in the final order." Appellant's Br. p. 15.

Indiana Rule of Appellate Procedure 46(A)(8)(a) states that arguments in an Appellant's Brief "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning." Further, "Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on . . . ." *Id.* We note that Gerhard's argument regarding the Fidelity and PEFCU accounts contains no explanation, including what he believes to be the correct balances of these accounts, or citation to the record. As such, we conclude he has waived this argument. Likewise, Gerhard's argument (as we interpret it) that his maintenance payments to Virginia should be viewed as assets distributed to Virginia as part of the division of marital assets is unclear at best. It is not, as required by Appellate Rule 46(A)(8)(a), cogent, nor does he cite to any authority in support of his position. He has thus also waived this argument.

### C. Capital Gains Tax

Gerhard next argues the trial court "ignored" the capital gains taxes he incurred as a result of substantial withdrawals he made from the parties' joint Fidelity account. He argues, "the implications of the liquidation of the Fidelity account had already occurred by the time of the final hearing in this matter. The Court attributed to [sic] the cost of the capital gains tax entirely to Gerhard . . . both parties should be responsible for the payment of the tax . . . ." Appellant's Br. p. 19. He seems to contend the capital gains tax was excluded from the exhibit attached to the trial court's order. That exhibit is a chart that lists all of the parties' assets and debts.

[21]    To the extent the trial court did not account for the capital gains tax in the division of marital assets and debts, we direct the trial court to make a correction on remand.  We also note that Indiana Code Section 31-15-7-5 provides that the trial court may deviate from an equal division of the marital property if there is evidence that an equal division would not be just and reasonable in light of, among other things, "[t]he conduct of the parties during the marriage as related to the disposition or dissipation of their property." *Id.*

[22]    The trial court found:

> 34.  Husband opened a new Fidelity account . . . in January 2014, which he kept at a zero balance until after he filed his Petition for Dissolution.  Husband proceeded to live from marital assets from January 2014 through September 2014 and to deposit his entire income earned from Purdue in his new separate account despite being able to pay for his living expenses from his income.

> 35. From January 1, 2014 through October 2014, Husband spent in excess of $12,000.00 on groceries and in excess of $15,000.00 on vacations from marital assets for the benefit of himself and the children.

> * * * * *

> 67. Husband transferred $828,004.62 from joint accounts into accounts in his individual name from January 15, 2014 through August 31, 2014.  Of that amount, $407,879.80 was transferred prior to the February 19, 2014 date of filing.

68. Wife transferred $87,357.38 from joint accounts into accounts in her individual name from January 15, 2014 through August 31, 2014. Of that amount, $8,000.86 was transferred prior to the February 19, 2014 date of filing.

* * * * *

71. Wife incurred attorney fees to sort through the numerous transfers of money from the two joint Fidelity accounts from which in excess of $915,362.00 was removed since January 15, 2014.

* * * * *

74. Husband removed over ten times the amount of money that Wife did from the joint Fidelity accounts during 2014. Wife did not have access to sufficient funds from other sources to pay her living expenses. Husband did have sufficient income to pay his living expenses during that time. It is appropriate for Husband to pay the capital gains tax of approximately $66,000.00 on the withdrawals from the joint Fidelity accounts in 2014.

App. pp. 29-30. Again, Gerhard does not specifically challenge the trial court's findings as being unsupported by the evidence.

[23] In short, the trial court found Gerhard needlessly liquidated marital assets; he had sufficient personal income to support himself and the children while this dissolution action was pending. As a result, Gerhard incurred capital gains tax. Gerhard's numerous transfers also caused Virginia to incur attorney fees. The trial court's findings clearly establish Gerhard inappropriately disposed of marital assets. The trial court did not abuse its discretion by ordering Gerhard

to pay the $66,000.00 tax debt, even if it resulted in an uneven distribution of marital assets. To the extent that debt is not accounted for in the chart attached to the trial court's order and results in a deviation from the presumption of an equal division, the trial court should make any necessary corrections to the chart and/or its order on remand.

## II. Maintenance

[24] Gerhard next contends the trial court abused its discretion by ordering him to pay $3,200.00 per month through December 25, 2015, to Virginia in spousal maintenance. A trial court's decision to award maintenance is purely within its discretion . . . ." *Coleman v. Atchison*, 9 N.E.3d 224, 228 (Ind. Ct. App. 2014). "An abuse of discretion will be found if the trial court's decision is clearly against the logic and effect of the facts or reasonable inferences to be drawn therefrom, if the trial court misinterprets the law, or if it disregards evidence of factors in a controlling statute." *Banks v. Banks*, 980 N.E.2d 423, 426 (Ind. Ct. App. 2012), *trans. denied*.

[25] Indiana Code Section 31-15-7-2 permits a trial court to find maintenance is necessary for a spouse if the receiving spouse is: 1) physically or mentally incapacitated to the extent that spouse's ability to support himself or herself is materially affected; 2) the receiving spouse lacks sufficient property, including marital property apportioned to the spouse, to provide for the spouse's needs; or 3) the receiving spouse is the custodian of a child whose physical or mental incapacity requires the custodian to forgo employment.

In determining whether to award maintenance, the trial court must consider:

> (A) the educational level of each spouse at the time of marriage and at the time the action is commenced;

> (B) whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;

> (C) the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and

> (D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment.

Ind. Code § 31-15-7-2.

Here, the trial court found:

> 54. Husband was ordered to pay the sum of $3,200.00 per month in spousal maintenance to the Wife. These payments should continue through December 25, 2015, to permit Wife to obtain employment.

> 55. Wife did not present expert testimony tending to prove and did not prove that she is disabled and unable to work. Wife has not demonstrated that she requires rehabilitative or disability maintenance beyond December 25, 2015.

App. pp. 27-28. Gerhard contends these findings are inconsistent and, thus, an abuse of discretion. We disagree. Read together, findings of fact 54 and 55 state that Virginia should receive maintenance until December 25, 2015, but that the evidence does not support an order for maintenance beyond that date.

[28] Gerhard argues that Virginia did not prove she is unable to work. He cites to the evidence most favorable to his position and argues that the trial court's findings do not support its conclusion that maintenance is necessary. Again we note that our standard of review does not permit us to reweigh the evidence. *Mitchell*, 875 N.E.2d at 322-23.

[29] The trial court found:

> 58. Although Wife has an MBA and an undergraduate degree in chemical engineering, Wife has not been employed since 2002 by agreement of the parties.
>
> 59. Wife's break in employment occurred so that Wife could stay at home with the parties' children and serve as their primary caregiver and homemaker.
>
> 60. Wife has not had any additional educational training since 2002.
>
> 61. Husband has a Ph.D. and an undergraduate degree in electrical engineering.
>
> 62. Husband is employed at Purdue University as the Director of the Network for Computational Nanotechnology, the Reilly Director of the Center for Predictive Materials and Devices, and

a Professor of Electrical and Computer Engineering. Husband has been a tenured professor at Purdue University since December 15, 2003.

63. Husband earns $268,026.76 in gross wages from Purdue University. Husband also earns additional monies for consulting or speaking engagements.

App. p. 28.

[30] Our review of the record reveals that Virginia, who has an engineering degree and a master's degree in business administration, has been unemployed for thirteen years. Instead of working outside the home, Virginia and Gerhard agreed Virginia would stay home with their two children; she was home with them their entire lives. Virginia has not returned to school, completed any training, or updated her resume in any way. In contrast, Gerhard has a Ph.D. in electrical engineering, is a tenured professor at Purdue University, and earns $268,000.00 annually. There is ample evidence to support the above-quoted findings related to spousal maintenance, and those findings support the trial court's conclusion maintenance was necessary. Thus, the trial court did not abuse its discretion by ordering Gerhard to pay spousal maintenance.

### III. Gag Order

[31] The trial court found: "12. Husband should continue to be restrained from discussing Wife's medical situation with anyone besides his medical providers, his attorney, and the treatment team in this case." App. p. 22. Gerhard first contends the evidence does not support that order and, second, that it is overly

broad and violates his right to free speech. We note that, during the final hearing, Gerhard's attorney asked, "Do you recall the court issuing a[n] order in [sic] October 14, 2014 stating that you are not to talk about her medical condition or mental health with anyone other than your attorney or healthcare providers?" Tr. p. 92. Gerhard confirmed he did. His counsel then asked, "Are you asking [the trial court] to look at that and rewrite it *as he sees fit* given that the two of you will be divorced?" *Id.* (emphasis added). Gerhard responded, "Yes please." *Id.*

[32] Gerhard did not ask the trial court to lift what the parties refer to as a gag order, nor did he request any specific modifications to it. Instead, he agreed the trial court should have discretion to write the order as it saw fit. The trial court saw fit to order Gerhard not to discuss Virginia's medical situation with anyone except his medical providers, his attorney, and the treatment team. Any error in that order was invited by Gerhard, and he may not now take advantage of it. *See Harris v. Harris*, 42 N.E.3d 1010, 1013 (Ind. Ct. App. 2015).

## Conclusion

[33] The trial court abused its discretion by twice adding the value of the Mitsubishi Outlander Sport into the marital estate. The trial court shall make any necessary corrections to its order with regard to the capital gains tax. The trial court did not abuse its discretion by equally dividing the marital assets between Gerhard and Virginia, by ordering Gerhard to make maintenance payments to

Virginia, or by ordering Gerhard to abide by a "gag order."  We affirm in part, reverse in part, and remand for corrections consistent with this decision.

Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Mathias, J., concur.