Gilbert Randall AUGSPURGER,
Appellant–Respondent,

v.

Julie E. HUDSON, Appellee–Petitioner.

No. 49A04–0111–CV–514.

Court of Appeals of Indiana.

Jan. 30, 2004.

504

Denise F. Hayden, Indianapolis, IN, Attorney for Appellant.

Sherwood P. Hill, Clinton E. Blanck, Maurer Rifkin & Hill, P.C., Carmel, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

The trial court entered a Decree of Dissolution (the Decree) on February 14, 2001, dissolving the marriage between Gilbert Randall Augspurger (Husband) and Julie Hudson (Wife). Pursuant to the Decree, Wife was awarded 90% of the marital estate, spousal maintenance in the amount of $421.07 per week, and $21,000 for future medical treatment of her physical and mental incapacity. The court further determined that Husband should pay a portion of Wife's attorney fees, an amount to be determined at a future hearing. Thereafter, Husband filed a Motion to Correct Error, which the trial court granted in part on September 5, 2001. In that order, the trial court granted Husband's motion as to the issue of property division. The trial court concluded that an equal division of the marital estate was proper and ordered the parties to attempt to negotiate an agreed division of property, noting that either party could request a hearing to determine the division should negotiation prove unsuccessful. Additionally, the court ordered spousal maintenance to continue until August 9, 2002 and noted that Wife may petition for additional relief if her condition does not improve. Finally, with regard to Husband's motion to correct error, the trial court reduced Husband's payment for Wife's future medical treatment to $6000. In this order, the trial court also ordered Husband to pay $17,360.60 of Wife's attorney fees.

Thereafter, on September 21, 2001, Husband filed a Motion to Reconsider Order of September 5, 2001, which the trial court does not appear to have ruled upon. On September 28, 2001, Wife filed a Praecipe for Hearing to Determine Division of Property. Prior to a hearing on the division of property, Husband filed the instant appeal on October 4, 2001. The trial court subsequently granted a motion to stay pending appeal. On January 18, 2002, Wife moved to dismiss the appeal because there was no final appealable order. Instead of dismissing the appeal, this court remanded the cause to the trial court with directions to hold a further hearing, if necessary, and to make its determination concerning the division of marital assets and debts. Following various delays, a hearing was held in the trial court on February 26, 2003. The trial court entered its Final Order of Division of Property the following day (Final Order). On appeal, Husband raises the following consolidated and restated issues for our review:

1. Was the trial court empowered to enter the Decree of February 14, 2001?

2. Did the 90/10 division of property in the Decree amount to an abuse of discretion?

3. Did the trial court abuse its discretion in awarding spousal maintenance to Wife?

4. Was the award for Wife's future medical treatment erroneous?

5. Did the trial court err in awarding attorney fees to Wife?

In her cross-appeal, Wife presents the following restated issues for review:

6. Did the trial court abuse its discretion in reducing Wife's share of the marital estate in its September 5, 2001 order on Husband's motion to correct error?

7. Did the trial court erroneously omit certain marital debts in the Final Order that were previously included in the Decree?

8. In the September 5, 2001 order on Husband's motion to correct error, did the trial court abuse its discretion in reducing the award for Wife's future medical treatment?

We affirm.

Husband and Wife were married on February 14, 1981, and no children were born to their marriage. On November 5, 1996, Wife filed a petition for dissolution of the parties' marriage. The complex procedural landscape of this case has been set forth in relevant part above. In sum, three basic issues were before the trial court: (1) how to divide the marital assets and debts; (2) whether to award spousal maintenance to Wife; and, (3) whether to award attorney fees to Wife. Relevant facts will be provided below where necessary.

### Husband's Appeal

#### 1.

■ Husband challenges the authority of the trial court in issuing the Decree on February 14, 2001. The Decree is signed by Robert J. Overton, as Judge of the Marion Superior Court, Civil Division, Room No. 10. Husband claims, "[n]owhere in the transcript, nor in the Record is there any order appointing Robert J. Overton as a judge in any capacity." *Appellant's Brief* at 24.

Following submission of Husband's appellate brief and upon Wife's motion, the trial court entered an order on May 15, 2003, correcting the clerk's record. The order directed the clerk to "correct the Clerk's Record in the appeal ... to reflect the true state of the Record by supplementing the Record by forwarding a certified copy of the Order appointing Robert J. Overton Judge *Pro Tempore* on February 14, 2001 ... to the Clerk of the Court of Appeals." *Appellee's Supplemental Appendix* at 36.

The supplemented record before us clearly reveals that David J. Dryer, Presiding Judge of the Marion County Superior Court, appointed Robert Overton "as Judge Pro Tempore of the Marion Superior Court, Civil Division, Court Room 10 on [February 14], 2001." *Id.* at 38. As a duly appointed judge pro tempore, Judge Overton had authority to enter the Decree.[1]

#### 2.

■ Husband asserts several arguments with regard to the division of property in the Decree. In particular, Husband contends that the 90/10 division in favor of Wife constitutes an abuse of discretion because the trial court did not state its reasons for deviating from the statutory presumption that an equal division is just and reasonable. *See* Ind.Code Ann. § 31–15–7–5 (West 1998). Moreover, Husband asserts that in the Decree, the trial court failed to consider the economic circumstances of each spouse at the time the disposition of property was to become effective.

These arguments are not well taken because the trial court's subsequent order, granting in part Husband's motion to correct error, changed the division of property originally ordered in the Decree. Pursuant to the September 5, 2001 order, the marital estate was to be divided equally between the parties. Therefore, Husband's arguments regarding the original

---

1. We note that after February 14, 2001, Judge Dreyer assumed responsibility for and authority over the case, including ruling on Husband's motion to correct error and issuing the Final Order.

division of property in the Decree are moot.

3.

■ Husband challenges the trial court's award of spousal maintenance to Wife. In this regard, Husband argues that the diagnoses and recommended treatments offered by Wife's expert medical witnesses "are so confusing, commingled and disparate as to be unreliable." *Appellant's Brief* at 15. Husband further asserts that the trial court failed to make a specific finding that Wife was physically or mentally incapacitated to the extent that the ability to support herself was materially affected and failed to articulate any clear diagnosis of Wife's condition.[2]

■ Ind.Code Ann. § 31–15–7–2(1) (West 1998) provides for maintenance of an incapacitated spouse as follows:

If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is nec-

essary during the period of incapacity, subject to further order of the court. The trial court's power to make an award of maintenance is wholly within its discretion, and we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances of the case. *Fuehrer v. Fuehrer*, 651 N.E.2d 1171 (Ind.Ct.App.1995), *trans. denied*. "The presumption that the trial court correctly applied the law in making an award of spousal maintenance is one of the strongest presumptions applicable to the consideration of a case on appeal." *Id.* at 1174.

■ In this case, the trial court entered findings of fact from which it concluded that Wife was entitled to incapacity maintenance.[3] When a trial court enters special findings under Ind. Trial Rule 52, "[w]e will not set aside such findings unless clearly erroneous and [will] give due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Cannon v. Cannon*, 758 N.E.2d 524, 526 (Ind.2001); *see also Fuehrer v. Fuehrer*, 651 N.E.2d at 1173 ("[s]pecial findings and

---

2. Husband asserts in passing that Wife's living expenses were never actually ascertained. In the Decree, however, the trial court specifically found that Wife's net weekly expenses are $421.07, based upon weekly living expenses of $510.29 and gross weekly income of $89.22. While we have not been favored with a complete transcript from the final hearings in this matter, the record before us contains a Verified Financial Declaration of Wife that supports these figures. Husband has failed to establish error.

3. We recognize Judge Sullivan's concern, expressed in his separate opinion, with respect to the trial court's findings regarding Wife's medical condition. While, admittedly, the trial court could have better phrased its findings of fact, we cannot agree that the findings are mere recitations of testimony, witness opinion, and diagnosis. A review of the findings reveals that the trial court weighed the evidence and credited Wife's experts over Hus-

band's expert. Specifically, after detailing the evidence presented by Wife's medical experts, the findings address the testimony of Husband's expert and focus on the weaknesses of the doctor's testimony/diagnosis (often using language pregnant in meaning such as "Dr. Unverzagt *admitted* that . . ."). *Appellant's Appendix* at 31–32 (emphasis supplied). The logic of the trial court's findings clearly leads to and supports its conclusion regarding Wife's incapacity. We conclude that the findings sufficiently reveal the trial court's reasoning and its analysis of the evidence, thus, allowing meaningful appellate review of this issue. *See Fobar v. Vonderahe*, 756 N.E.2d 512, 518 (Ind.Ct.App.2001) ("[t]he purpose of findings of fact and conclusions of law is to provide the parties and reviewing courts with the theory upon which the case was decided"), *aff'd in relevant part*, 771 N.E.2d 57 (Ind.2002).

the judgment which rests upon those findings will be set aside only if they are clearly erroneous in that the record is devoid of facts or inferences to support the findings, or that the judgment is unsupported by the findings"). Thus, when reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of witnesses. *Fuehrer v. Fuehrer*, 651 N.E.2d 1171.

 In the Decree, the trial court specifically found that "[Wife]'s medical condition has negatively and materially affected her ability to support herself financially." *Appellant's Appendix* at 27. The trial court then proceeded to detail the evidence presented by Wife's experts, C. Norman Shealy, M.D., Ph.D. and Leonard Dale Guyer, M.D.,[4] regarding her medical condition. Of these lengthy findings, we recount some of the most relevant below:

14. Dr. Shealy's diagnosis was electromagnetic dysthymia, which meant her body's electrical system was out of balance, causing severe fatigue and mental confusion....

15. According to Dr. Shealy, the chances of totally normal mental brain function were not excellent. She could be improved 50% to 70%, but there was little chance that she will be able control [sic] her life the way normal people do.

16. Dr. Shealy believed [Wife's] ability to support herself financially was materially affected by her medical condition. In his opinion, [Wife] would have an extremely hard time finding and maintaining a regular job—even an entry-level clerical position—because of her confusion, frequent pneumonia and general mental status.

17. According to Dr. Shealy, [Wife] did not seem to be psychologically stable on a day-to-day basis, due to periods of confusion and sleep trouble.

18. Dr. Shealy recommended an intensive, two week treatment program for [Wife] to help reestablish normal electrical function of the brain. The program would cost approximately $6,000.00, and there was an 80% chance of her showing significant improvement.

\* \* \*

20. ...Following that program, [Dr. Shealy] recommended a six month at-home program of physical and mental exercise and training and a proper diet.

\* \* \*

24. After a battery of laboratory tests, Dr. Guyer's diagnosis was fibromyalgia: an unrelenting, generalized body achiness or pain for more than a three months duration which is often accompanied by sleep disturbance and chronic fatigue....

\* \* \*

26. Along with fibromyalgia, Dr. Guyer diagnosed mineral deficiency, mag-

4. In a separate portion of his brief, Husband contends that the trial court "err[ed] in not exercising it's 'gatekeeping' function and admitting unscientific evidence and unsubstantiated medical evidence." *Appellant's Brief* at 25. Citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Ind. Evidence Rule 702(b), Husband challenges the admission into evidence of the depositions of Dr. Shealy and Dr. Guyer. Husband has waived this argument, however, by failing to raise an objection on this ground at trial when the depositions were admitted into evidence. *See In re Paternity of V.A.M.C.*, 768 N.E.2d 990 (Ind.Ct. App.2002), *reh'g granted in part on other grounds*, 773 N.E.2d 359.

nesium deficiency, amino acid deficiency, amino acid metabolism disorder, hormone deficiency, chronic viral infection and amine dysfunction.

27. Dr. Guyer felt that, to a reasonable medical certainty, her condition was treatable. He anticipated that she could get to a point of doing better over a period of time.

28. As a course of treatment, Dr. Guyer suggested physical therapy, massage therapy, and correction and balance of nutritional deficiencies, hormone deficiencies, amino acid deficiencies and metabolism with medication, supplements and a change in her diet.

29. Generally speaking, Dr. Guyer anticipated that a patient with [Wife's] symptoms would have progressive and incremental improvement during the course of treatment, which could meet his goal of an 80% resolution after nine to twelve months. However, the doctor's experience with other fibromyalgia patients was that it could take as long as thirty-six months for maximum resolution of symptoms.

30. Dr. Guyer estimated that a one year course of treatment with him would cost [Wife] $15,000.

31. [Wife's] sleep dysfunction was common to fibromyalgia and to the amino acid deficiencies she had; it could be resolved by correcting those deficiencies.

32. In Dr. Guyer's opinion, it would be impossible for [Wife] to engage in a meaningful vocation and support herself financially. Given her edu-

cation and motivation, she could be capable of better-than-minimum wage employment if his course of treatment were successful, but all she could do right now is work part-time at an entry level job.

33. Dr. Guyer anticipated that, today, it would be very difficult for [Wife] to maintain any kind of regular employment that has extensive physical demands because of her low degree of endurance, or mental demands because of the forgetfulness and inability to focus clearly.

34. Dr. Guyer held Dr. Shealy in very high regard. He believed [Wife] should continue to treat with Dr. Shealy simultaneously because his expertise as a neurosurgeon would be very helpful in clarifying her medical complications.

*Appellant's Appendix* at 28–31.[5]

These findings are sufficient to support the trial court's conclusion that Wife is entitled spousal maintenance due to her incapacity and resulting inability to support herself. To the extent that Husband argues her condition has not been clearly diagnosed and her diagnoses are "so confusing, commingled and disparate as to be unreliable", *Appellant's Brief* at 15, we observe that these arguments "go to the relative weight and credibility of the evidence and witnesses at trial, matters within the purview of the trial court." *Cannon v. Cannon*, 758 N.E.2d at 527. Because the trial court's findings in this regard are not clearly erroneous, we sustain its conclusion that Wife is entitled to incapacity maintenance.

4.

Next, Husband challenges the trial court's decision to award $6000 to Wife

---

5. We note that the trial court also entered findings with regard to the testimony of Husband's medical expert. It is sufficient to observe, without detailing those findings, that the trial court did not appear to give much weight or credit to that expert's testimony.

for her future medical treatment with Dr. Shealy. He claims that this prospective medical expense cannot be considered a debt of the marriage and, therefore, is not subject to division between the parties.

█ Husband correctly observes that debts incurred by a party after the dissolution petition has been filed are not to be included in the marital pot. *See Sanjari v. Sanjari,* 755 N.E.2d 1186, 1192 (Ind.Ct. App.2001) ("[g]enerally, the marital pot closes on the date the dissolution petition is filed"). The award for Wife's future medical treatment, however, cannot fairly be characterized as part of the trial court's distribution of marital assets and debts. While not expressly designated as such,[6] it is apparent that the award for Wife's future medical treatment constitutes an award of maintenance. We note that, with regard to incapacity maintenance, Wife requested that the trial court award $421.07 per week as maintenance and order Husband to "pay $6,000.00 so that she can take Dr. Shealy's treatment program, and $15,000.00 so that she can treat with Dr. Guyer." *Appellee's Appendix* at 47. The trial court ultimately awarded $6000 to Wife for her future medical treatment

with Dr. Shealy. Husband has failed to establish that this additional maintenance award constitutes an abuse of the trial court's discretion. *See Bizik v. Bizik,* 753 N.E.2d 762, 769 (Ind.Ct.App.2001) (affirming maintenance award of $400 per week and order that Husband maintain health insurance for Wife and "pay all of Wife's reasonable and necessary non-insurance covered medical, hospital, dental, optical, psychological and prescription pharmaceutical expenses pending further court order"), *trans. denied.*

5.

█ Finally, Husband argues that the trial court abused its discretion by ordering him to pay $17,360.60 of Wife's attorney fees despite the significant maintenance award also ordered. Husband's argument in this regard follows:

The best case scenario for distribution of assets for the Husband under the September 5, 2001 order would be approximately $89,000.00. The payments ordered total $55,361.92, leaving Husband with $33,638.08. Wife, on the other hand would have $89,000.00 in assets,

---

6. Husband incorrectly cites to *Coster v. Coster,* 452 N.E.2d 397 (Ind.Ct.App.1983), for the proposition that payments may be categorized as maintenance so long as they are specifically designated as support or maintenance. In that case, there was an issue as to whether an award should be construed as a maintenance provision or a portion of the property division paid in installments. We explained:

[A]n award consisting of periodic payments in a Decree of Dissolution will be construed as maintenance only if one of two requisites is met. The trial court may include in the dissolution decree a finding of mental or physical incapacity materially affecting the spouse's ability to be self-supportive. Without such a finding, an award may still be regarded as maintenance if specifically designated as "support" or "maintenance."

*Id.* at 403. In the instant case, the trial court entered a specific finding regarding Wife's

incapacity and resulting inability to be self-supportive. Therefore, pursuant to *Coster,* it was not necessary for the award to be specifically designated as support or maintenance. We further observe that *Coster* is incorrect to the extent that it says an award merely designated as support or maintenance, without more, is sufficient to establish that the award is for maintenance. *See Millar v. Millar,* 593 N.E.2d 1182, 1183 (Ind.1992) ("In spite of the 'maintenance' terminology used by the trial court, the facts stated by the trial court clearly demonstrate that this in fact was a property division order"); *see also Brinkmann v. Brinkmann,* 772 N.E.2d 441 (Ind.Ct.App.2002) (noting that a designation as maintenance is but one factor in determining whether an award is in the nature of maintenance or a property settlement).

income of $32,001.32 and all attorney fees paid.

The court could not have considered the resources of the parties in making that order. Wife clearly had more resources available to her and she was perfectly able to pay her own fees.

*Appellant's Brief* at 28.

 When reviewing an award of attorney fees in connection with a dissolution decree, we will reverse the trial court only for an abuse of discretion. *Fobar v. Vonderahe,* 756 N.E.2d 512 (Ind.Ct.App. 2001), *aff'd in relevant part,* 771 N.E.2d 57 (2002). "In making such an award, courts should consider the parties' relative resources, ability to engage in gainful employment, and ability to earn an adequate income." *Id.* at 517. Consideration of these factors furthers the legislative purpose behind the award of attorney fees under Ind.Code Ann. § 31–15–10–1 (West 1998), which is "to provide access to an attorney to a party in a dissolution proceeding who would not otherwise be able to afford one." *Fobar v. Vonderahe,* 756 N.E.2d at 517.

While Husband may be correct that Wife made out better than he in the dissolution, the evidence reveals a large disparity between the parties' earning abilities.[7] As detailed above, the trial court found that Wife's self-supportive ability is materially affected by her medical condition. On the other hand, the court found Husband to be "physically fit, vigorous and able-bodied, and actively pursuing his occupation." *Appellant's Appendix* at 27. The court further found, "There is a disparity in the economic condition of the parties in that [Husband] will continue to earn greater income than [Wife]." *Id.* at 35. In light of these findings, we cannot

say the trial court abused its discretion in awarding attorney fees to Wife.

## Wife's Appeal

### 6.

On cross-appeal, Wife argues that the trial court erred in reducing her share of the marital estate from 90% to 50% following Husband's motion to correct error. In particular, Wife asserts that an equal division is unjust and unreasonable in light of her poor health and disproportionately low earning ability.

 Subject to the statutory presumption that an equal distribution of marital property is just and reasonable, the disposition of marital assets is committed to the sound discretion of the trial court. *Maloblocki v. Maloblocki,* 646 N.E.2d 358 (Ind.Ct.App.1995). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances, or the reasonable, probable, and actual deductions to be drawn therefrom. *In re Marriage of Preston,* 704 N.E.2d 1093 (Ind.Ct.App.1999). An abuse of discretion also occurs when the trial court misinterprets the law or disregards evidence of factors listed in the controlling statute. *Id.* at 1096. "The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal." *Hyde v. Hyde,* 751 N.E.2d 761, 765 (Ind. Ct.App.2001). Thus, we will reverse a property distribution only if there is no rational basis for the award and, "[a]lthough the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court." *Id.*

7. At the time of the dissolution, Wife had a weekly gross income of less than $90, while Husband had a weekly gross income of over $1700.

Indiana law requires that marital property be divided in a "just and reasonable manner" and provides for the statutory presumption that "an equal division of the marital property between the parties is just and reasonable." Ind.Code Ann. § 31–15–7–5 (West 1998). "This presumption may be rebutted, however, by evidence of each spouse's contribution to the acquisition of the property, the extent to which the property was acquired before the marriage or by inheritance, the economic circumstances of each spouse, the conduct of the parties relating to the disposition or dissipation of assets, and each spouse's earning ability." *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind.2002).

While the trial court's findings of fact in the Decree could support deviation from the presumed equal division of the marital estate, we conclude that such deviation is not mandated. In this case, the trial court could reasonably determine that an equal division is just and reasonable under the circumstances, despite Wife's poor health and meager earning ability. As noted by Husband, in addition to half of the marital estate, the trial court awarded substantial spousal maintenance and payment of attorney fees to Wife. The maintenance payments, by definition, were ordered to supplement Wife's future income until her earning ability improved with her health. The payment of attorney fees also helped to improve Wife's financial condition upon dissolution. Further, it goes without saying that these significant awards negatively impacted Husband's economic condition upon dissolution. Division of property should not be considered in a vacuum, and the trial court is free to consider other awards (such a spousal maintenance) when determining the proper division. In light of the overall effect of the dissolution on the parties, Wife has not established that the trial court's decision to divide the marital estate equally is unjust or unreasonable.

**7.**

Wife challenges the omission from the Final Order of six marital debts that had previously been found in the Decree. She claims that the trial court should have equally divided these debts in the Final Order.

In the Decree, the trial court specifically found:

50. With regard to the parties' marital liabilities, the Court finds as follows:

\* \* \*

(b) The parties owe $4,789.29 to Wooden & McLaughlin, as shown on Wife's Trial Exhibit 12.

(c) [Wife] owes $249.13 to St. John's Regional Health Center, as shown on Wife's Trial Exhibit 13.

(d) [Wife] owes $792.50 to Decatur Medical Center, as shown on Wife's Trial Exhibit 14.

(e) [Wife] owes $488.00 to her mother, as shown on Wife's September 1, 1999 Financial Declaration.

(f) [Wife] owes $3,500.00 to her father, as shown on Wife's September 1, 1999 Financial Declaration.

(g) [Wife] owes $11,000.00 to her parents, as shown on Wife's September 1, 1999 Financial Declaration.

(h) [Wife] owes $350.00 to her eye doctor, Dr. Pierce, as shown on Wife's September 1, 1999 Financial Declaration.

*Appellant's Appendix* at 34–35. Despite these specific findings, which were not challenged by Husband in his motion to correct error, the trial court entered the following finding in its Final Order:

C. *Debts*

Evidence at final hearing indicates several debts, but the Court now finds only one debt of the parties as shown below. It shall be paid equally between the parties.

Wooden & McLaughlin law firm: $4,789.00

*Appellee's Supplemental Appendix* at 21.

Wife contends that the trial court had no authority to "modify the existing Decree" because "[n]either party filed a Petition for Modification or asserted fraud." *Appellee's Brief* at 21. She specifically argues:

> The Decree, and subsequent amendment by Motion to Correct Error, are currently the law of the case; Husband's appeal has not been ruled upon. See generally, Ind.Code 31–15–2–16(b) (A dissolution decree is final when entered, subject to the right of appeal.) A trial court is required to divide all of the marital property, including assets and debts, in a dissolution proceeding. See *Moore v. Moore*, 695 N.E.2d 1004, 1010 (Ind.Ct.App.1998). Once that is done, and an order concerning property distribution is entered, the property disposition may not be revoked or modified unless fraud is asserted. Ind.Code 31–15–7–9.1.[8] See also *Pactor v. Pactor*, [181 Ind.App. 329,] 391 N.E.2d 1148, 1150 (Ind.Ct.App.1979).

*Appellee's Brief* at 21.

The authority relied upon by Wife is inapposite, as there was no final division of the marital estate until the trial court's entry of the Final Order on February 27, 2003. Wife's own motions/filings before this court recognize that the trial court's order on Husband's motion to correct error did not constitute a final judgment of the division of the marital estate. For example, in her motion to dismiss the instant appeal, filed on January 18, 2002, Wife asserted: "The trial court has not concluded the case. It still has power and authority to dispose of the outstanding issue of the division of the marital estate." [9] *Motion to Dismiss* at 3. Therefore, Wife's contention that, absent fraud, the trial court did not have authority to "modify" the Decree in the Final Order is without merit. Wife has failed, therefore, to establish error with regard to the trial court's distribution of the marital debt.

### 8.

Finally, Wife briefly argues, *with no citation to authority*, that the trial court abused its discretion in awarding to Wife future medical expenses of $6000, rather than $21,000. As a result, she was awarded payment for only her future

---

8. Ind.Code Ann. § 31–15–7–9.1 (West 1998) provides:

(a) The orders concerning property disposition entered under this chapter ... may not be revoked or modified, except in case of fraud.

(b) If fraud is alleged, the fraud must be asserted not later than six (6) years after the order is entered.

9. In a subsequent motion, filed with this court on May 13, 2002, Wife states:

2. In particular, ... the trial court had not yet made a final determination as to the division of the parties' marital assets and debts. It remains with the trial court to dispose of the outstanding issue of division of marital assets and debts.

* * *

6. The issue of division of marital assets and debts ... has not been determined by the trial court. A hearing was scheduled for May 31, 2002.

* * *

8. This matter will not be ripe for appeal until the trial court makes its final determination as to the division of marital debts at the hearing on May 31, 2002.

*Response to Motion to Reconsider* at 1–2 (emphasis in original).

treatment with Dr. Shealy. Wife asserts that a year of treatment with Dr. Guyer (at a cost of $15,000) was also needed in order "to improve her medical condition to a point where she is no longer reliant upon Husband's spousal maintenance." *Appellee's Brief* at 26. She further argues that by taking away one of her treatment opportunities, the trial court "may have undermined the advice of Wife's treating physician". *Id.* at 26–27.

■ As previously stated, an award of maintenance is wholly within the trial court's discretion, and we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances of the case. *Fuehrer v. Fuehrer*, 651 N.E.2d 1171. In the instant case, the trial court's findings of fact reveal that Dr. Shealy recommended an intensive, two-week treatment program for Wife at a cost of approximately $6000. Following said treatment, Dr. Shealy opined, "there [is] an 80% chance of her showing significant improvement." *Appellant's Appendix* at 29. On the other hand, Dr. Guyer (who met with Wife on one occasion for about ninety minutes) recommended a general course of treatment over an unspecified period of time, in addition to the treatment with Dr. Shealy. The court's findings reveal, "Generally speaking, Dr. Guyer anticipated that a patient with [Wife's] symptoms would have progressive and incremental improvement during the course of treatment, which could meet his goal of an 80% resolution after nine to twelve months." *Id.* at 30. Dr. Guyer estimated that a year of treatment with him would cost $15,000.

In light of these findings, we cannot say that the trial court abused its discretion in only awarding payments for Dr. Shealy's treatment program. This intensive program would reportedly provide Wife with an 80% chance of significant improvement.

We are not persuaded that the trial court was required to award additional funds for a year of treatment with Dr. Guyer, especially considering the other substantial maintenance awarded to Wife. Wife has failed to establish error in this regard.

Judgment affirmed.

RILEY, J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

I respectfully concur in result as to Part 3 concerning the award of spousal maintenance to Wife. In this regard, at the outset, it is necessary to examine the majority's conclusion that the so-called findings of fact "are sufficient to support the trial court's conclusion that Wife is entitled to spousal maintenance. . . ." Op. at 510.

First and foremost, the so-called findings are not findings at all. They are mere recitations of testimony, witness opinion and medical diagnosis. At no point does the trial court find such testimony, opinion and diagnosis to be the fact. *Moore v. Indiana Family and Social Services Admin.*, 682 N.E.2d 545 (Ind.Ct.App. 1997). Such pronouncements are inadequate as a basis for reviewing the judgment of the court and may be considered surplusage. *Perez v. United States Steel Corp.*, 426 N.E.2d 29, 33 (Ind.1981).

Although neither party on appeal has challenged the specificity of the purported findings, it is nevertheless inappropriate for this court to cloak the trial court recitations in the garb of true factual determinations and specific findings as to those facts. *Van–Scyoc v. Mid–State Paving*, 787 N.E.2d 499, 508–09 (Ind.Ct.App.2003). Accordingly, as directed by our Supreme

Court in *Perez*, we should consider the evidentiary recitations as mere surplusage.

The case is thus left in the posture of a general judgment without supporting specific findings of fact as to the issue in question. In other words, the trial court has failed to make findings upon some issues, and therefore the general judgment controls as to those issues. *D.A.X., Inc. v. Employers Ins. of Wausau*, 659 N.E.2d 1150 (Ind.Ct.App.1996), *trans. denied.* If our appellate review were conducted in this posture we would look to the evidence of record which would support the general judgment as to spousal maintenance. As noted, the trial court has set forth that evidence and therefore permits a meaningful review by this court. Accordingly, I conclude that the evidence does support the award of spousal maintenance and for that reason concur in result as to Part 3.

As to whether the maintenance award was improper because it included future medical treatment by Dr. Shealy, I agree with the majority that the award was not improper. I would merely add a parenthetical observation that the award of $6000.00 was for a brief two-week period of treatment. It would appear that Wife received such treatment.

Subject to the above comments and observations, I concur.