# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**KENDRA G. GJERDINGEN**
Mallor Grodner LLP
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DAYLENE M. (ATCHISON) COLEMAN, )
                                          )
       Appellant-Petitioner, )
                                          )
               vs. )         No. 90A02-1311-DR-921
                                          )
SCOTT A. ATCHISON, )
                                          )
       Appellee-Respondent. )

APPEAL FROM THE WELLS CIRCUIT COURT
The Honorable Kenton W. Kiracofe, Judge
Cause No. 90C01-1102-DR-22

**May 13, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Daylene Coleman ("Wife") appeals the trial court's order dissolving her marriage to Scott Atchison ("Husband") following a final hearing. Wife presents two issues for our review:

1. Whether the trial court abused its discretion when it denied her request for incapacity maintenance.

2. Whether the trial court abused its discretion when it divided the marital estate.

We reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were married on September 18, 2000. The marriage was a subsequent and childless marriage for both parties. Husband and Wife were both employed during the early years of the marriage, but Wife became disabled and stopped working in 2004. Wife began receiving social security disability payments effective in April 2006. Husband has maintained steady employment and has children from a previous relationship.

On January 10, 2011, Wife filed a petition for dissolution of the marriage. Following the final hearing on June 20, 2013, the dissolution court entered the final decree, finding and concluding in relevant part as follows:

28. The Court finds that the presumption that an equal division of assets and liabilities between the parties is just and reasonable has been rebutted by relevant evidence presented by Daylene, and that a division of property weighted in Daylene's favor is warranted due to the extent to which the property was acquired by each spouse prior to the marriage (the marital residence and the Exelis Salaried Retirement Plan benefit), the economic circumstances of each spouse at the time the disposition of the property is to become effective, and the earnings or earning ability of the parties as

2

related to a final division of property and final determination of the property rights of the parties.

* * *

31.    The parties have stipulated that Daylene is physically or mentally incapacitated to the extent that her ability to support herself is materially affected.

32.    Daylene currently receives Social Security disability insurance payments pursuant to an Administrative Law Judge's decision on January 16, 2009, as to her disability.

* * *

35.    In determining an incapacity maintenance issue, the Court must make an initial factual determination whether a spouse's self-supportive ability is materially affected by physical or mental incapacity and, if so, must determine propriety of a maintenance award and amount thereof by considering such factors as financial resources of spouse seeking maintenance, including matrimonial property apportioned to spouse, standard of living established in marriage, duration of marriage, and ability of spouse from whom maintenance is sought to meet his needs while meeting those of spouse seeking maintenance. See Temple v. Temple, 328 N.E.2d 227 (Ind. Ct. App. 1975).

* * *

37.    At trial Scott's attorney also contended that the Court could consider future inheritances that Daylene might receive from her mother, arguing that consideration of future inheritances is a legitimate consideration in determining someone's ability to support themselves and that the Court should consider potential resources where Daylene "has money she can get at." Daylene submits that the Temple case, supra, sets out the factors the Court is to consider in determining the amount of maintenance. Nowhere is future inheritances mentioned. One reason would be a future inheritance is not only speculative, but is not a vested interest. Daylene has no legal right to access her mother's property in order to pay for Daylene's living expenses. Therefore the Court does not consider any prospective inheritance Daylene might receive for the purpose of determining spousal maintenance.

38.    Daylene's sister, Theresa Haneline, testified that she had paid toward Scott's attorney's fees in connection with custody litigation with his former

3

spouse, as well as Scott's expenses in connection with heavy equipment school, and the parties' health insurance and medical bills during calendar year 2010 when Scott was unemployed for most of the year. She also provided financial assistance to Daylene after Scott left her the night of the day she had a surgical procedure, and loaned her money in order to employ counsel in connection with this proceeding.

39.     Daylene testified that she has the following monthly income and living expenses: . . . . Total monthly bills $3,299.02; Monthly Social Security Disability payment $1,634.00; [monthly deficit $1,665.02]

* * *

41.     A trial court's finding as to whether or not a spouse's disability affects their [sic] ability for self support is entirely discretionary. Dillman v. Dillman, 478 N.E.2d 86, 87 (Ind. Ct. App. 1985). But "[e]ven if a trial court finds that a spouse's incapacity materially affects his or her self-supportive ability, a maintenance award is not mandatory." Temple, 328 N.E.2d 227 (Ind. Ct. App. 1975).

42.     In the present case, the undisputed evidence indicated clearly that the parties had a very low standard of living during the marriage. While Scott was the primary income earner, due to the nature of his employment he frequently endured furloughs, some of which lasted more than a year. During the layoff periods, Daylene's sister supported the couple financially.

43.     This was a subsequent, childless marriage for both parties and it lasted little more than a decade. Scott's only pre-marital assets of significance were his pension and a truck, while Daylene had a modest retirement account and some equity in what would become the marital residence. But for the financial largesse of Daylene's sister, the parties would have not managed to eke out the modest standard of living they had together. No clearer evidence of that can be seen than the financial circumstances at the final hearing. Daylene, though only receiving $1,634.00 monthly from Social Security Disability, has recently purchased a new car, is able to pay her bills, and remains in the former marital residence. She also has two (2) adult daughters residing with her, both of whom are gainfully employed per Daylene's testimony. By contrast, Scott was forced to declare bankruptcy and lost his home; he now resides in a small mobile home trailer with his unemployed fiancée and his teenaged son, for whom he receives no child support.

44.     After considering such factors as financial resources of spouse seeking maintenance, including matrimonial property apportioned to

4

spouse, standard of living established in marriage, duration of marriage, and ability of spouse from whom maintenance is sought to meet his needs while meeting those of spouse seeking maintenance, the Court finds Daylene should not be awarded incapacity maintenance. there [sic] are no extenuating circumstances that directly relate to the criteria for awarding incapacity maintenance and that Scott should pay Daylene incapacity maintenance.

45.     With respect to payment of attorney's fees, the Court finds that Scott has a vastly superior economic circumstance and earning ability, and accordingly, should pay a substantial portion of Daylene's attorney's fees and other litigation expenses.

Appellant's App. at 15-20 (emphases added).  And despite having found that Wife had rebutted the presumption of an equal division of the marital pot, the dissolution court awarded one-half of the marital pot to each party.  This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

In Trabucco v. Trabucco, 944 N.E.2d 544, 548-49 (Ind. Ct. App. 2011), trans. denied, we set out the applicable standard of review where, as here, a party requests that the trial court issue findings and conclusions.

When findings and conclusions thereon are entered by the trial court pursuant to the request of any party to the action, we apply a two-tiered standard of review.

First, we determine whether the evidence supports the findings and second, whether the findings support the judgment.  In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment.  We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment.  Challengers must establish that the trial court's findings are clearly erroneous.  Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made.  However, while we defer

5

substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

Id. (quoting Balicki v. Balicki, 837 N.E.2d 532, 535-36 (Ind. Ct. App. 2005), trans. denied) (internal citations omitted).

We note that Husband has not filed an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing the appellee's arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes prima facie error. Zoller v. Zoller, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. Wright v. Wright, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002). However, we review de novo questions of law, regardless of the appellee's failure to submit a brief. McClure v. Cooper, 893 N.E.2d 337, 339 (Ind. Ct. App. 2008).

**Issue One: Incapacity Maintenance**

Wife first contends that the dissolution court abused its discretion when it denied her request for incapacity maintenance. In particular, Wife maintains that, because the parties stipulated that she is physically or mentally incapacitated to the extent that her ability to support herself is materially affected, the court was "required" to award her incapacity maintenance. Appellant's Brief at 10.

A dissolution court may award maintenance for only "three, quite limited" purposes: spousal incapacity maintenance, caregiver maintenance, and rehabilitative

6

maintenance.  Dewbrew v. Dewbrew, 849 N.E.2d 636, 644 (Ind. Ct. App. 2006).  Indiana Code 31-15-7-2(1) provides that, if the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.  A trial court's decision to award maintenance is purely within its discretion and we will only reverse if the award is against the logic and effect of the facts and circumstances of the case.  Matzat v. Matzat, 854 N.E.2d 918, 920 (Ind. Ct. App. 2006) (citing Augspurger v. Hudson, 802 N.E.2d 503, 508 (Ind. Ct. App. 2004)).

In support of her contention on appeal, Wife directs us to our supreme court's opinion in Cannon v. Cannon, 758 N.E.2d 524 (Ind. 2001).  In Cannon, our supreme court observed as follows:

> We agree with the Court of Appeals that, given the language of the statute, a[n incapacity] maintenance award is not mandatory.  But . . . the Legislature has narrowly circumscribed the authority of courts to award spousal maintenance.  While such factors as payments made by one spouse to another pursuant to the terms of provisional orders and depletion of marital assets are appropriate considerations in dividing the marital pot, we believe that the statutory scheme for spousal maintenance does not admit of such considerations.  Where a trial court finds that a spouse is physically or mentally incapacitated to the extent that the ability of that spouse to support himself or herself is materially affected, the trial court should normally award incapacity maintenance in the absence of extenuating circumstances that directly relate to the criteria for awarding incapacity maintenance.

758 N.E.2d at 527 (emphasis added; citation omitted).

Here, the dissolution court acknowledged the parties' stipulation that Wife is physically incapacitated to the extent that her ability to support herself is materially affected.  A stipulation is binding on both the parties and the trial court, and establishes a

7

particular matter as a fact. Clark v. State, 562 N.E.2d 11, 17 (Ind. 1990). Still, the dissolution court, citing Temple v. Temple, 164 Ind. App. 215, 328 N.E.2d 227 (1975), observed that incapacity maintenance was not mandatory despite the fact of Wife's disability. In Temple, this court held that,

> [i]f the spouse's self-supportive ability is materially impaired, the propriety of a maintenance award and the amount thereof should then be determined after considering such factors as the financial resources of the party seeking maintenance (including matrimonial property apportioned to her), the standard of living established in the marriage, duration of the marriage, and the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance. Even though the court finds a spouse's supportive ability is materially impaired, a maintenance award is not mandatory.

328 N.E.2d at 230.

And here, the dissolution court made findings based on the Temple factors to explain its decision not to award incapacity maintenance to Wife. But the dissolution court also found, quoting Cannon without citation, that there are "no extenuating circumstances that directly relate to the criteria for awarding incapacity maintenance and that Scott should pay Daylene incapacity maintenance." Appellant's App. at 20. Thus, while it would appear that an award of incapacity maintenance is indicated, the dissolution court's findings and conclusions are inconsistent on this issue.

Twenty-six years after our opinion in Temple, our supreme court made clear in Cannon that a trial court has limited discretion whether to award incapacity maintenance once the court makes the requisite finding regarding disability. See 758 N.E.2d at 527. Here, again, the parties stipulated that Wife is physically incapacitated to the extent that her ability to support herself is materially affected, and the dissolution court is bound by

8

that stipulation. Because we cannot reconcile the inherent inconsistency in the dissolution court's conclusions both to grant and deny incapacity maintenance, pursuant to Cannon we remand and instruct the dissolution court either to award Wife incapacity maintenance or to identify specific extenuating circumstances directly related to the statutory criteria for awarding such maintenance that would justify denying the award. See 758 N.E.2d at 527.

### Issue Two: Marital Estate

Wife next contends that the trial court abused its discretion when it divided the marital estate equally between the parties. We discussed the standard of review of the distribution of a marital estate in Hardebeck v. Hardebeck, 917 N.E.2d 694, 699-700 (Ind. Ct. App. 2009):

> In dissolution cases, the court "shall divide the [marital] property in a just and reasonable manner[.]" Ind. Code § 31-15-7-4. Indiana Code Section 31-15-7-5 governs the distribution of marital property and provides as follows:
>
> > The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence of the following factors, that an equal division would not be just and reasonable:
> >
> > (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
> >
> > (2) The extent to which the property was acquired by each spouse:
> >
> > > (A) before the marriage; or
> > >
> > > (B) through inheritance or gift.

9

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

The division of marital assets is within the dissolution court's discretion, and we will reverse only for an abuse of discretion.

(Alterations original; emphases and citations omitted).

Here, as Wife points out, the dissolution court expressly found that Wife had rebutted the presumption of an equal division of the marital estate and that "a division of property weighted in [Wife]'s favor is warranted[.]" Appellant's App. at 16. But despite that finding, the dissolution court divided the marital estate in half. The trial court's judgment on this issue is not supported by its finding. This is clear error. On remand, we instruct the dissolution court to award Wife more than fifty percent of the marital estate consistent with its finding that Wife has rebutted the presumption of an equal division.

Reversed and remanded with instructions.

VAIDIK, C.J., and BROWN, J., concur.