## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 16 2015, 9:17 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Robert C. Beasley | Deborah Farmer Smith |
| Dennis Wenger & Abrell, P.C. | Campbell Kyle Proffitt LLP |
| Muncie, Indiana | Carmel, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nancy Jo L. Coles, | June 16, 2015 |
| *Appellant,* | Court of Appeals Case No. 18A02-1410-DR-767 |
| v. | Appeal from the Delaware County Circuit Court No. 4 |
| Robert Nelson Coles, Jr., | Cause No. 18C04-1303-DR-027 |
| *Appellee* | The Honorable Linda Wolf Judge. |

## Friedlander, Judge.

[1] Nancy Jo Coles is totally and permanently disabled and cannot support herself. Upon dissolution of her thirty-five year marriage to Robert Coles, the trial court divided the marital estate evenly and ordered Robert to pay spousal maintenance to Nancy for a finite period of time – two years. On appeal, Nancy presents the following restated issues for review:

1.    Did the trial court abuse its discretion by awarding maintenance for a predetermined, finite period of time?

2.    Did the trial court err by not awarding maintenance during the eighteen-month provisional period?

3.    Was it an abuse of discretion to equally divide the marital estate given the economic disparity between the parties?

4.    Should the value of Robert's accrued paid time off have been included in the marital pot?

We affirm in part, reverse in part, and remand.

Nancy and Robert were married on May 13, 1978. They have one child, Travis, who is now an adult. Robert worked consistently throughout the marriage, while Nancy worked for periods of time but generally stayed home and fulfilled the agreed-upon role of homemaker and primary caregiver for Travis. Nancy has suffered from significant health issues for more than a decade. On February 4, 2013, Robert filed a petition to dissolve the marriage.

The final hearing occurred on July 31 and August 1, 2014. At the time of the hearing, Robert and Nancy were sixty-five and sixty-two years old, respectively. The parties stipulated to the admission into evidence of Robert Gregori, M.D.'s report concerning Nancy's medical condition and her ability to work.[1] In his detailed report, Dr. Gregori concluded:

> Based on Ms. Coles' medical history, extensive medical records reviewed, and her present physical examination, I would support the position of both her treating rheumatologist and primary care physician, who have recognized for over the last year that she is totally

---

[1] Dr. Gregori was the independent medical examiner hired by Robert.

and permanently disabled. Based on her limited tolerance for standing and walking, as well as her limited tolerance for upright sitting and her impairments of the hands and elbows, I do not believe that she could do even a sedentary position on a part-time basis. I would not expect her to sit for more than 30 minutes in duration or for a total of two hours over the course of a day period in the upright position. I would also not expect her to tolerate standing, walking, or any repetitive activities involving her hands or upper extremities. Her medical condition requires her to frequently lie on a recliner throughout the course of the day. I have no doubt that the patient is totally and permanently disabled due to her rheumatologic condition, especially the rheumatoid arthritis. Contributing to her disabling arthritis are her medical conditions that include hypothyroidism, fibromyalgia, interstitial lung disease, and atrial fibrillation. Again, she is permanently and totally disabled and has likely been so for a number of years.

*Appellant's Appendix* at 40-41.

[4] Robert and Nancy have accumulated a marital estate of just over one million dollars, including a modest mortgage-free home, two automobiles, a boat and trailer, other personal property, and cash and retirement assets. While Nancy cannot work, Robert is an executive with an annual base salary of $120,000 and bonus eligibility. Well over half of his after-tax income constitutes disposable income. Moreover, Robert has accrued the maximum amount of paid time off (PTO) allowed by his company – 520 hours. Robert is in excellent health and can continue to work.

[5] Robert did not provide Nancy with spousal maintenance payments during the provisional period. He did, however, pay the real estate taxes on the marital home for one year, three bi-annual installments of the homeowner's insurance, and Nancy's Visa bill for several months.

[6] In addition to attorney fees, Nancy sought to recoup from Robert approximately $41,000, which she had used to support herself during the provisional period. She also asked for the court to order Robert to pay $1720 per month for spousal maintenance and to pay her health insurance premiums of approximately $540 per month. Robert, on the other hand, argued that he should not be required to pay maintenance or, alternatively, that any maintenance order "be for a fixed duration so that [he] can determine how much longer, after age 66, he must continue to work." *Id*. at 54. In lieu of provisional maintenance and attorney fees, Robert sought a 52.5/47.5 split of the marital estate in favor of Nancy. Nancy asked for a 65/35 split in her favor.

[7] In the final dissolution decree issued on September 29, 2014, the trial court divided the marital estate equally, with each party receiving approximately $520,000 in assets.[2] Robert was ordered to pay $10,000 of Nancy's attorney fees. Further, the court ordered him to pay spousal maintenance in the amount of $2000 per month for two years from October 1, 2014 through September 1, 2016. Nancy appeals from this order.

1.

[8] Nancy contends that the trial court abused its discretion by restricting the spousal maintenance payments to two years. In light of the stipulated evidence

---

[2] Included in the Nancy's assets was the marital home, valued at $148,600.

that she is totally and permanently disabled and unable to work, Nancy argues that the court could not limit the period of maintenance.

[9]     An award of spousal maintenance is statutorily authorized for three limited purposes: spousal incapacity maintenance, caregiver maintenance, and rehabilitative maintenance. *Coleman v. Atchison*, 9 N.E.3d 224, 229 (Ind. Ct. App. 2014).  With respect to incapacity maintenance, Indiana Code Ann. § 31–15–7–2(1) (West, Westlaw current with P.L. 1-2015 to P.L. 87-2015 of the First Regular Session of the 119th General Assembly, with effective dates through April 29, 2015) provides:  "[i]f the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court."

[10]     A trial court's decision to award maintenance is within its discretion, and we will reverse only if the award is against the logic and effect of the facts and circumstances of the case. *Coleman v. Atchison*, 9 N.E.3d 224.  Our Supreme Court has made clear, however, that "a trial court has limited discretion whether to award incapacity maintenance once the court makes the requisite finding regarding disability." *Id.* at 229 (citing *Cannon v. Cannon*, 758 N.E.2d 524 (Ind. 2001)).  In *Cannon*, the Court observed:

> Where a trial court finds that a spouse is physically or mentally incapacitated to the extent that the ability of that spouse to support himself or herself is materially affected, the trial court should normally award incapacity maintenance in the absence of extenuating

circumstances[3] that directly relate to the criteria for awarding incapacity maintenance.

*Cannon v. Cannon*, 758 N.E.2d at 527.

[11] In the instant case, there is no dispute that Nancy is physically incapacitated to the extent that her ability to support herself is materially affected. In fact, she is totally and permanently disabled and unable to work. Recognizing Nancy's incapacity, the trial court awarded monthly spousal maintenance in the amount of $2000. With no explanation or finding of extenuating circumstances, however, the court limited the maintenance payments to two years. This was an abuse of discretion.

[12] I.C. § 31-15-7-2(1) authorizes an award of spousal maintenance "during the period of incapacity" and makes this award "subject to further order of the court." *Id*. *See also Haville v. Haville*, 825 N.E.2d 375, 378 (Ind. 2005) ("duration of [spousal maintenance award] is expressly measured by the period of the recipient's incapacity"). Accordingly, such an award may be modified in the future if the spouse's incapacity sufficiently resolves or extenuating circumstances arise that directly relate to the criteria for awarding incapacity maintenance.

---

[3] Such circumstances include: the financial resources of the party seeking maintenance (including marital property awarded), the standard of living established during marriage, duration of the marriage, and the ability of the spouse from whom maintenance is sought to meet his/her needs while meeting the needs of the incapacitated spouse. *See Coleman v. Atchison*, 9 N.E.3d at 229.

While there may be limited situations where a court could find that a spouse's incapacity will last for a finite period of time, this is clearly not such a case.[4] *See Spivey v. Topper*, 876 N.E.2d 781 (Ind. Ct. App. 2007). Accordingly, the trial court abused its discretion by limiting the maintenance award to two years. *See id.* (court abused its discretion by concluding that spouse's incapacity was finite and by limiting maintenance to six months). On remand, the trial court is directed to amend the dissolution decree to reflect that Nancy is entitled to receive spousal maintenance for an indefinite period of time, subject to future modification upon Robert's retirement or other changed circumstances.

2.

Nancy also argues that the trial court abused its discretion by failing to award maintenance reimbursement to her for the eighteen-month provisional period. Nancy claims that she consumed approximately $41,000 of the marital estate for her living and medical expenses[5] during the provisional period and that Robert had a spousal duty to contribute to these expenses out of his earnings.

A provisional order is designed to maintain the status quo of the parties during the dissolution proceedings. *Mosley v. Mosley*, 906 N.E.2d 928 (Ind. Ct. App.

---

[4] We further observe that the trial court did not find, nor does the record support a finding, that extenuating circumstances directly relating to the criteria for awarding incapacity maintenance will necessarily arise in two years. Given Robert's age and pending retirement, changed circumstances are certainly on the horizon, but the timing is unknown. When such changes arise, of course, Robert is entitled to seek modification of the maintenance award, which may include termination or significant reduction of the maintenance obligation.

[5] Of this amount, $5710 was for HVAC replacement for the marital home, which was ultimately awarded to Nancy.

2009). It is an interim order that terminates when the final dissolution decree is entered. *Mosley v. Mosley*, 906 N.E.2d 928 (citing I.C. § 31–15–4–14 (West, Westlaw current with P.L. 1-2015 to P.L. 87-2015 of the First Regular Session of the 119th General Assembly, with effective dates through April 29, 2015)). "Any disparity or inequity in a provisional order—can and should—be adjusted in the trial court's final order." *Mosley v. Mosley*, 906 N.E.2d at 930.

[16]     The determination of temporary orders, such as for provisional maintenance, is committed to the sound discretion of the trial court. *Id*. *See also* Ind. Code Ann. § 35-15-4-8(a) (West, Westlaw current with P.L. 1-2015 to P.L. 87-2015 of the First Regular Session of the 119th General Assembly, with effective dates through April 29, 2015) ("court may issue an order for temporary maintenance…in such amounts and on such terms that are just and proper"). On appeal, we consider the evidence most favorable to the trial court's decision and will reverse only where the decision is clearly against the logic and effect of the facts and circumstances before the court. *Mosley v. Mosley*, 906 N.E.2d 928.

[17]     Due to a number of continuances brought on by the parties, there was no provisional hearing in this case. Rather, Nancy sought reimbursement for provisional maintenance at the final hearing. The record reveals that, despite the absence of a provisional order, Nancy continued living in the mortgage-free marital home, while Robert paid the homeowner's insurance and the real estate taxes. Robert also paid Nancy's Visa bill for several months in 2013. Further, during the provisional period, Nancy remained on Robert's health insurance and accessed approximately $5000 of the couple's medical health savings

account. Under the circumstance and in light of the broad discretion granted trial courts regarding provisional orders, we conclude that the trial court did not abuse its discretion when, in the final decree, it ordered Robert to pay $10,000 of Nancy's legal fees but did not award provisional maintenance.

3.

[18] Nancy challenges the trial court's equal division of the marital estate as an abuse of discretion. She claims this was improper given the vast disparity in the economic circumstances of the parties.

[19] Our standard of review is well settled:

> The division of marital assets lies within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. When a party challenges the trial court's division of marital property, [s]he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal. We may not reweigh the evidence or assess the credibility of the witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property. Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court.

*Troyer v. Troyer*, 987 N.E.2d 1130, 1139 (Ind. Ct. App. 2013) (quoting *Galloway v. Galloway*, 855 N.E.2d 302, 304 (Ind. Ct. App. 2006)), *trans. denied.*

[20] Indiana law presumes that an equal division of the marital property is just and reasonable. I.C. § 31-15-7-5 (West, Westlaw current with P.L. 1-2015 to P.L. 87-2015 of the First Regular Session of the 119th General Assembly, with effective dates through April 29, 2015). The presumption, however, may be

rebutted by relevant evidence that an equal division would not be just and reasonable. *Id.* Factors a court may consider in this regard include: the contribution of each spouse to the acquisition of the property; the extent to which the property was acquired by each spouse before the marriage or through inheritance or gifts; the economic circumstances of each spouse at the time of disposition; the conduct of the parties as it relates to disposition or dissipation of their property; and the earnings or earning ability of each spouse. *Id.*

[21]    Though Nancy focuses on the economic position of each party, she begins her argument by noting that she brought significant assets into the marriage[6] while Robert brought only debt. Nancy, however, does not cite to any evidence that these assets were held separately by her during the marriage, without being comingled with joint marital assets. Additionally, we find that the sheer length of the marriage weighs heavily against considering the assets and liabilities each party brought into the marriage.

[22]    We turn now to the income earning ability and economic circumstances of the parties. The record establishes that Robert continues to have a substantial earning ability, while Nancy is unable to work due to her disability and her medical and living expenses far exceed her social security income. Robert's monthly net income is approximately $6700, of which $2000 is dedicated to

---

[6] Nancy brought approximately $25,000 in cash and $57,000 in inheritance assets. The couple also received financial assistance and gifts from Nancy's parents during the marriage.

spousal maintenance. The property division also provides Nancy with assets totaling over $520,000.

[23] Although the relative earning abilities and economic circumstances of the parties could support a division of marital assets in Nancy's favor, it was within the trial court's discretion to determine that the disparity was adequately addressed by the $2000 spousal maintenance award.[7] We reject the invitation to substitute our judgment for that of the trial court. *See Troyer v. Troyer*, 987 N.E.2d 1130. *See also Augspurger v. Hudson*, 802 N.E.2d 503, 513 (Ind. Ct. App. 2004) ("the trial court could reasonably determine that an equal division is just and reasonable under the circumstances, despite Wife's poor health and meager earning ability"). As we have previously observed, "[d]ivision of property should not be considered in a vacuum, and the trial court is free to consider other awards (such a[s] spousal maintenance) when determining the proper division." *Id.* at 513. In light of the overall dissolution order, Nancy has not established that the trial court's decision to divide the marital estate equally is unjust or unreasonable.

4.

[24] Finally, Nancy contends that the value of Robert's accrued PTO should have been included as an asset of the marital estate. She claims the PTO was vested

---

[7] We note that a dissolution court's role is not to equalize salaries. *Hyde v. Hyde*, 751 N.E.2d 761 (Ind. Ct. App. 2001).

and Robert had a right to convert the 520 hours of PTO to cash in December 2013. Nancy provides little analysis in support of this argument or her assertion that *Bingley v. Bingley*, 935 N.E.2d 152 (Ind. 2010), is controlling.

In *Bingley*, the husband was retired from Navistar and received, in addition to his pension, paid health insurance for the remainder of his life. The Supreme Court held that these benefits plainly constituted an intangible marital asset subject to division, as the husband was presently receiving the benefits and they were not subject to divestiture in future years. *Id.* The Court explained that the health insurance benefits "closely resemble[d] a right to future pension payments." *Id.* at 156.

"Whether a right to a present or future benefit constitutes an asset that should be included in marital property depends mainly on whether it has vested by the time of dissolution." *Id.* at 155. A right can vest in possession or interest. That is, it can be an immediately existing right of present enjoyment or a presently fixed right to future enjoyment. *See Bingley v. Bingley*, 935 N.E.2d 152. The cash value of Robert's PTO is neither.

The parties do not dispute that Robert had accrued 520 hours of PTO. A personnel document issued by Robert's employer was admitted into evidence. It indicates that "PTO is a system which provides for **paid absence** from work for rest/relaxation, illness, short-term disability, condolence leave, or personal emergencies." *Appellee's Appendix* at 88 (emphasis in original). An employee may not accumulate more than 520 hours of PTO. To prevent a loss in accrual,

employees have a cash-in option to receive cash "in lieu of PTO accrual". *Id*. at 90. The document provides:

> In order to utilize the "cash-in" option, an employee will need to choose by December 29[th] how much *future PTO accrual* he or she desires to cash-in. The center will provide employees the opportunity to elect this cash-in option between December 1 and December 29 of each calendar year. The election will be for the calendar year following the election…. Employees will be paid the second payroll in January.
>
> There are certain restrictions that apply to the cash-in option.
>
> 1.     Before an employee may elect to receive cash in lieu of PTO accrual *for the future calendar year* the employee must have accrued 40 hours.
>
> 2.     A balance of 40 hours must be reflected in the employee PTO balance after case [sic] in occurs.

*Id*. at 91 (emphases supplied). While employees are generally entitled to payment for accrued PTO at separation from employment, the document provides that an employee "who is being discharged for **significant** disciplinary reasons…or who fails to provide the requisite prior written notice of his or her resignation of employment is not entitled to receive pay for his or her accrued and unutilized Paid Time Off." *Id*. at 94 (emphasis in original).

[28]    A plain reading of the personnel document reveals that Robert was not entitled to convert his 520 hours of accrued PTO to cash in December 2013, as asserted by Nancy. Rather, if elected in December (which it was not), Robert could have cashed in the 160 hours he was to earn in 2014, the next calendar year. At the time of the dissolution, Robert did not have a present right to be paid for the PTO accrued during the marriage.

[29] Further, the 520 hours accrued during the marriage were subject to actual use for time off during the remainder of Robert's employment. In other words, he did not have a fixed right to future enjoyment (that is, payment for 520 hours of accrued PTO) because at the time of his retirement the amount of accrued PTO could be anywhere between 0 and 520 hours. *See Akers v. Akers*, 729 N.E.2d 1029, 1032 (Ind. Ct. App. 2000) ("it was mere speculation for the trial court to assume that Husband would not suffer any illness and would retain at least 187 unused sick days at their current value until retirement"). The PTO hours were also subject to divestiture depending on the nature of his separation from service.

[30] We have consistently held that only property in which a party has a vested interest at the time of dissolution may be included as a marital asset. *Akers v. Akers*, 729 N.E.2d 1029. The PTO accrued during the marriage had a future value that was indeterminate and speculative at best. *See id*. The trial court properly excluded it from the marital estate.

[31] Judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to amend the decree of dissolution to reflect that Nancy is entitled to receive spousal maintenance for an indefinite period of time.

Baker, J., and Kirsch, J. concur.