

**FILED**

Aug 24 2015, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jeffery Leeper
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Julie C. Dixon
Lori B. Schmeltzer
Ciyou & Dixon, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Benny Harris,

*Appellant-Petitioner,*

v.

Tonya Harris (n/k/a Keith),

*Appellee-Respondent.*

August 24, 2015

Court of Appeals Cause No.
49A05-1409-DR-434

Appeal from the Marion Superior
Court

The Honorable Robert Altice, Judge
The Honorable Kimberly Mattingly,
Magistrate
Cause No. 49D05-1303-DR-10467

**Barnes, Judge.**

# Case Summary

Benny Harris appeals the trial court's distribution of marital property in the dissolution of his marriage to Tonya Harris. We affirm in part, reverse in part, and remand.

# Issues

Benny raises two issues, which we restate as:

    I.    whether the trial court properly ordered Benny to pay Tonya half of his Tier I railroad retirement benefits when the account reaches pay status; and

    II.    whether the trial court's distribution of marital property effectuated a 50/50 division of the marital estate.

Tonya raises one issue, which we restate as whether she is entitled to appellate attorney fees.

# Facts

Benny and Tonya were married on August 16, 2008. The couple had no children, and both were employed during the marriage. On March 19, 2013, Tonya filed a petition for dissolution of the marriage. Benny later cross-petitioned.

Benny did not comply with Tonya's discovery requests, and on January 13, 2014, the trial court ordered him to respond to Tonya's interrogatories and requests for production of documents within seven days. At the January 22,

2014 final hearing, Benny had not fully complied with the trial court's order. The trial court dissolved the marriage but continued the hearing as it related to the distribution of property.

[5]     On March 19, 2014, another hearing was held. At the hearing, Tonya argued that Benny had wasted marital assets during the marriage. Benny responded to that argument by asserting that, as a married couple with significant disposable income, they both spent money on personal items. Benny specifically referenced purses and a mink coat purchased by Tonya and stated, "We believe she should keep them. We also are not asking for necessarily a valuation of this." Tr. pp. 85-86. Benny made a similar argument regarding improvements to the marital residence, which Tonya purchased shortly before the marriage. Benny argued that Tonya "will enjoy the benefits of those improvements to the house and we believe that is okay." *Id.* at 86. Benny later argued, "We do not believe it is significant that she put money that she had saved into the original purchase price of the house because that money was - - is coming - - is following her since he is not making a claim on the house." *Id.* at 90. Benny proposed that his Tier II railroad retirement benefits be divided 50/50 and that "all maritally acquired pension and 401(k) of [Tonya] be divided 50/50." *Id.* at 87.

[6]     On June 9, 2014, the trial court issued a final order and concluded, "A Fifty/Fifty (50%/50%) division of the marital estate is appropriate given the circumstances of the parties." App. p. 51. The trial court awarded Tonya the marital residence, her car, her bank accounts, and her 401(k) account. In addition to any debt owed on the marital residence and Tonya's car, the trial

court ordered Tonya to pay various credit card debts. The trial court awarded Benny his vehicles, subject to any debts thereon, and his 401(k). The trial court ordered the parties to "divide [Benny's] Rail Road Retirement Account (Tier 1 and 2) equally. To the extent the plan will not allow any portion to be divided via QDRO, the benefits shall be paid by Husband to Wife when the account reaches pay status." *Id.* at 52. Benny now appeals.

## Analysis

[7] The parties disagree regarding the standard of review. Although characterized as a finding rather than a conclusion, the trial court concluded that a 50/50 division of the marital estate was appropriate. *See Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind. 2005) ("In the event the trial court mischaracterizes findings as conclusions or vice versa, we look past these labels to the substance of the judgment."). "'In the absence of special findings, we review a trial court decision as a general judgment and, without reweighing evidence or considering witness credibility, affirm if sustainable upon any theory consistent with the evidence.'" *Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008) (quoting *Perdue Farms, Inc. v. Pryor,* 683 N.E.2d 239, 240 (Ind. 1997)).

### I. Railroad Retirement Benefits

[8] Benny contends that the trial court improperly awarded Tonya half of his future Tier I railroad retirements benefits. As an initial matter, we must address Tonya's argument that Benny invited any error regarding the division of those benefits. She asserts that at the final hearing Benny agreed he could be

responsible for offsetting the Tier I benefits. Under the invited error doctrine, which sounds in estoppel, a party may not take advantage of an error that he or she commits, invites, or which is the natural consequence of his or her own neglect or misconduct. *Witte v. Mundy ex rel. Mundy*, 820 N.E.2d 128, 133 (Ind. 2005).

[9] At the hearing, the following exchange took place between Benny's attorney and the trial court:

> THE COURT: I can't order the railroad to divide Tier I, but I can sure as heck order these parties to write checks to each other.
>
> MR. JONES: We agree with that, Judge- -
>
> THE COURT: Just like, you know, our firefighter pensions and all that, yes.
>
> MR. JONES: - - we just don't think it's appropriate.

[10] Tr. p. 104. Although Benny agreed that the trial court could order one party to issue a check to another, he specifically asserted that such an order was not "appropriate" as it related to the Tier I benefits. *Id.* This is consistent with his position throughout the hearing that the Tier I benefits were not divisible. For example, earlier in the hearing, Benny's attorney asserted:

> what Mr. Harris will advise the Court is that his investigation indicated that the Tier I could not be divided because the information provided from the Railroad Plan was that by law it cannot be divisible in a dissolution proceeding. Tier II can be divided.

[11] *Id.* at 86-87. Benny also offered and the trial court admitted into evidence an Attorney's Guide to the Partition of Railroad Retirement Annuities prepared by the United States Railroad Retirement Board, which generally supported his

position that Tier I benefits may not be partitioned. *See* Ex 3 p. 1. Considering Benny's argument as a whole, we do not believe that he agreed the Tier I benefits could be divided between the parties.

[12]     Nor are we persuaded that the trial court ordered the division of the Tier I benefits as a sanction for Benny's failure to comply with its discovery orders as Tonya suggests. Although Benny did not fully comply with Tonya's discovery requests or the trial court's orders related to such, there is no indication that the trial court ordered the division of the Tier I benefits as a sanction for Benny's failure to comply with discovery orders. Tonya has not established that Benny failed to preserve the issue for appellate review.

[13]     Regarding the merits of his argument, Benny claims that pursuant to *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S. Ct. 802 (1979), his Tier I benefits are not marital property subject to division in a dissolution proceeding. At issue is the interpretation of 45 U.S.C. § 231m, which pertains to certain railroad retirement benefits and provides in part, "no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated[.]" The interpretation of a statute is a question of law, which we review de novo. *Mertz v. Mertz*, 971 N.E.2d 189, 195 (Ind. Ct. App. 2012).

[14]     In *Hisquierdo*, the Supreme Court addressed the California Supreme Court's holding that a husband's railroad retirement benefits were community property

under state law and subject to division in a dissolution proceeding. *Hisquierdo*, 439 U.S. at 580, 99 S. Ct. at 808. In considering the general proposition that the subject of domestic relations belongs to the laws of the States and not the laws of the United States, the *Hisquierdo* court acknowledged that "State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." *Id.* at 581, 99 S. Ct. at 808 (quoting *United States v. Yazell*, 382 U.S. 341, 352, 86 S.Ct. 500, 507 (1966)).

[15] After analyzing the use of the term "individual" in the Railroad Retirement Act ("the Act") and Congress's intent in drafting §231m, *Hisquierdo* court concluded that the community property interest in railroad retirement benefits:

> conflicts with § 231m, promises to diminish that portion of the benefit Congress has said should go to the retired worker alone, and threatens to penalize one whom Congress has sought to protect. *It thus causes the kind of injury to federal interests that the Supremacy Clause forbids. It is not the province of state courts to strike a balance different from the one Congress has struck.*

*Id.* at 590, 439 S. Ct. at 813 (footnote omitted) (emphasis added). In support of this conclusion, the court explained:

> Congress has made a choice, and § 231m protects it. It is for Congress to decide how these finite funds are to be allocated. The statutory balance is delicate. Congress has fixed an amount thought appropriate to support an employee's old age and to encourage the employee to retire. Any automatic diminution of that amount frustrates the congressional objective.

*Id.* at 585, 99 S. Ct. at 810.

[16]    The court also considered the language of §231m prohibiting the anticipation of payment and explained that the Tier I benefit "corresponds exactly to those an employee would expect to receive were he covered by the Social Security Act." *Id.* at 575, 99 S. Ct. at 805 (citing 45 U.S.C. § 231b(a)(1)).  Further:

> Like Social Security, and unlike most private pension plans, railroad retirement benefits are not contractual.  Congress may alter, and even eliminate, them at any time.  This vulnerability to congressional edict contrasts strongly with the protection Congress has afforded recipients from creditors, taxgatherers, and all those who would "anticipate" the receipt of benefits[.]

*Id.* at 575-76, 99 S. Ct. at 805 (footnote omitted).

[17]    Because of this uncertainty, the court rejected the wife's request for "an offsetting award of presently available community property to compensate her for her interest in [husband's] expected benefits." *Id.* at 588, 99 S. Ct. at 811. The court reasoned, "An offsetting award, however, would upset the statutory balance and impair [husband's] economic security just as surely as would a regular deduction from his benefit check.  The harm might well be greater." *Id.* at 588, 99 S. Ct. at 811.  Further:

> Any such anticipation threatens harm to the employee, and corresponding frustration to federal policy, over and above the mere loss of wealth caused by the offset.  If, for example, a nonemployee spouse receives offsetting property, and then the employee spouse dies before collecting any benefits, the employee's heirs or beneficiaries suffer to the extent that the offset exceeds the lump-sum death benefits the Act provides.  See 45 U.S.C. § 231e.  Similarly, if the employee leaves the industry before retirement, and so fails to meet the "current connection with the railroad industry" requirement for certain supplemental benefits, see 45 U.S.C. § 231a(b)(1)(iv), the employee never will fully regain the amount of the offset.  A third possibility, of

course, is that Congress might alter the terms of the Act. In 1974, Congress eliminated certain double benefits accruing after 1982. If past California property settlements had been based on those benefits, then the change in the Act would have worked a multiple penalty on future recipients. By barring lump-sum community property settlements based on mere expectations, the prohibition against anticipation prevents such an obvious frustration of congressional purpose. It also preserves congressional freedom to amend the Act, and so serves much the same function as the frequently stated understanding that programs of this nature convey no future rights and so may be changed without taking property in violation of the Fifth Amendment.

*Id.* at 589-90, 99 S. Ct. at 812 (footnote omitted).

[18] Finally, the court recognized Congress may find the court's distinctions undesirable and alluded to the possibility of amending the Act. *Id.* at 590, 99 S. Ct. at 813. In 1983, the Act was amended to allow the division of Tier II retirement benefits.[1] *See* 45 U.S.C. §231m(b)(2); *Wilborn v. Wilborn*, 445 S.W.3d 629, 633 (Mo. Ct. App. 2014) (acknowledging the amendment of §231m means that Tier II benefits may now be treated as marital property subject to division and that *Hisquierdo*'s conclusion regarding Tier I benefits remains the same). Neither party suggests that the Act has been amended to allow the division of Tier I benefits even though Congress could have done so.

[19] More recently, in *Severs v. Severs*, 837 N.E.2d 498, 501 (Ind. 2005), our supreme court determined that social security disability benefits are not marital property

---

[1] Benny concedes the Tier II benefits are subject to division. *See* Appellant's Br. p. 6.

subject to division. The court reached this conclusion after referencing state law and then pointed out that "federal law dictates the same result as to social security benefits—disability or otherwise." *Severs*, 837 N.E.2d at 501. In its analysis, the court looked to a federal statute prohibiting the assignment of social security benefits and cited *Hisquierdo* for the proposition that the anti-assignment provisions of the Railroad Retirement Act of 1974 and the Social Security Act "are virtually identical" and the "holding that a trial court's assignment of Tier I benefits pursuant to a marital dissolution is a violation of both the antiassignment provision and the purpose of the benefit generally[.]" *Id.*

[20] On appeal, Tonya contends that the trial court's order does not run afoul of *Hisquierdo* because she was not awarded an offset of marital property in anticipation of Benny receiving railroad retirement benefits. We agree that the trial court's ordering Benny to pay Tonya one-half of his Tier I benefits "when the account reaches pay status" avoids the problems with anticipating benefits as described in *Hisquierdo*. App. p. 52. Tonya, however, does not address *Hisquierdo*'s conclusion that Congress intended this portion of the benefit to go to "the retired worker alone" and that the division of the benefit as marital property "threatens to penalize one whom Congress has sought to protect." *Hisquierdo*, 439 U.S. at 590, 99 S. Ct. at 813. Based on *Hisquierdo* and *Severs*, we conclude that Benny's Tier I benefits are his alone and are not marital property subject to division. *See also Plisinski v. Plisinski*, 700 N.E.2d 259, 261 (Ind. Ct. App. 1998) (concluding the trial court abused its discretion when it included

Tier I benefits as a marital asset and ordered husband to pay wife her share of the benefit); *Hodowal v. Hodowal*, 627 N.E.2d 869, 875 (Ind. Ct. App. 1994) ("Husband's early retirement subsidy was nothing more than possible future retirement income and as a matter of law was not marital property at the time of separation."). Thus, the trial court erroneously ordered the division of Benny's Tier I benefits when the account reaches pay status.

[21] Although we remand for the correction of the trial court's order so that it does not require the future division of Benny's Tier I benefits, it is unnecessary for the trial court to reconsider its division of marital property. First, because the order required the equal division of future benefits, removing them from the equation does not tip the remaining division of property in favor of one party or the other. Further, any consideration of the Tier I benefits by the trial court as a basis for deviating from the 50/50 presumption would, in effect, impair the value benefit Congress intended Benny alone to receive and would amount to an offset, which *Hisquierdo* prohibits. Finally, as acknowledged in *Hisquierdo*, there are countless reasons why Benny, who is in his mid-thirties, might not receive Tier I benefits in the amount calculated by Tonya at the hearing when he finally retires. Thus, any consideration by the trial court of Benny's future

receipt of Tier I benefits as part of its analysis of the parties' financial circumstances runs afoul of §231m as discussed in *Hisquierdo*.[2]

## II. Division of Marital Property

[22] Benny contends that the trial court did not effectuate a 50/50 division of the marital estate after concluding that such a division was appropriate. "By statute, the trial court must divide the property of the parties in a just and reasonable manner, including property owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to final separation of the parties, or acquired by their joint efforts." *Webb v. Schleutker*, 891 N.E.2d 1144, 1153 (Ind. Ct. App. 2008) (citing Ind. Code § 31-15-7-4(a)). "An equal division of marital property is presumed to be just and reasonable." *Id.* (citing I.C. § 31-15-7-5). "The division of marital assets is a matter within the sound discretion of the trial court." *Id.*

[23] The party challenging a trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute. *Id.* This presumption is one of the strongest presumptions applicable to our consideration on appeal. *Id.* "Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court." *Id.* at 1154.

---

[2] Put another way, Tonya is not entitled to a portion of Benny's future Tier I benefits any more than he is entitled to a portion of her future social security benefits. *See Severs*, 837 N.E.2d at 501 ("[F]ederal law prevents state courts from assigning social security benefits in a property division judgment.").

[24] During the proceedings, Benny failed to comply with the trial court's discovery orders and provided very little evidence regarding the value of the parties' various assets and debts. *See* Ex 1. In fact, Benny joined in the admission of Tonya's financial declaration. At the final hearing, Benny largely responded to Tonya's claim that he wasted marital assets by arguing that both parties spent large amounts of money during the marriage, with Tonya spending money on the house and purses. Benny's assertions were not focused on informing the trial court on how to achieve a 50/50 division of the marital assets.

[25] On appeal, Benny claims that the trial court awarded Tonya 70% of the marital estate. In support of this argument, Benny asserts that Tonya received almost $20,000.00 in equity in the marital residence and $7,100.00 in purses and a mink coat. However, at the hearing, Benny specifically rejected any claim to these assets. *See* Tr. pp. 86, 90. He cannot not now argue that the trial court improperly awarded those items to Tonya. *See Witte*, 820 N.E.2d at 134 (explaining that a party may not take advantage of an error that he or she invited).

[26] Further, Benny's calculation is based on Tonya receiving the full amount of her 401(k), which was valued at $89,332.96. However, at the hearing, Benny requested only that he be awarded one-half of "maritally acquired" 401(k). Tr. p. 87. Thus, his argument is flawed to the extent it relies on the entire value of Tonya's 401(k) as opposed to the portion earned during the parties' relatively short marriage. Further, Benny's argument is based on Tonya receiving half of

his Tier II benefits, which he proposed be divided 50/50. *See* Tr. p. 87. Benny may not now take advantage of an error that he invited.

[27] Finally, Benny contends that Tonya was awarded the majority of the furniture and all of the appliances for which "no discernable value" was provided in the record. Appellant's Br. 8. At the hearing, Tonya argued that she was still making payments on many of these items. Further, because Benny did not present the trial court with evidence of this property's value, we decline to address his contention that these items resulted in an improper allocation of the marital estate. *See Campbell v. Campbell*, 993 N.E.2d 205, 215 (Ind. Ct. App. 2013) (declining to address the purported unequal division of property where the party did not present evidence of the value of the items when it was the parties' burden to prove the value of the marital assets), *trans. denied*. Based on the arguments Benny made at the hearing and the lack of evidence provided by Benny regarding the value of the parties' property, he has not overcome the strong presumption that the trial court properly divided the marital estate.

### III. *Appellate Attorney Fees*

[28] Tonya contends she is entitled to appellate attorney fees pursuant to Indiana Appellate Rule 66(E), which allows us to assess damages if an appeal is frivolous or in bad faith. She argues that Benny's argument regarding the division of marital property is in bad faith and utterly devoid of plausibility. Although Benny has not established that the trial court abused its discretion in its division of the marital estate, we decline to authorize the payment of attorney fees.

# Conclusion

[29] Because the trial court erroneously ordered the division of Benny's Tier I railroad retirement benefits when the account reaches pay status, we reverse and remand with instructions to strike that language from the order. However, Benny has not established that the trial court abused its discretion in dividing the marital estate, and Tonya has not established that an award of appellate attorney fees is warranted. We affirm in part, reverse in part, and remand.

[30] Affirmed in part, reversed in part, and remanded.

Najam, J., concurs.
Kirsch, J., concurs in part and dissents in part with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Benny Harris,

*Appellant-Petitioner,*

v.

Tonya Harris (n/k/a Keith),

*Appellee-Respondent.*

Court of Appeals Case No.
49A05-1409-DR-434

**KIRSCH, Judge, concurring in part and dissenting in part.**

[31] I fully concur with my colleagues' holding that the trial court erred by ordering Husband to make an off-setting payment to Wife for his future receipt of the Tier I benefits. I reach a different conclusion regarding the division of the remainder of the marital estate, and for such reason, I respectfully dissent.

[32] The majority opinion states that "any consideration of [Husband's] future receipt of Tier I benefits as part of its analysis of the parties' financial circumstances runs afoul of §231m as discussed in *Hisquierdo.*" To me, it does not, and it is entirely appropriate for the trial court to consider Husband's exclusive right to the Tier I benefits as it impacts his overall economic circumstances in dividing the remainder of the marital estate.